

1998 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

9-9-1998

# United States v. Haywood

Precedential or Non-Precedential:

Docket 97-1652

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1998

Recommended Citation

"United States v. Haywood" (1998). *1998 Decisions.* Paper 218.
http://digitalcommons.law.villanova.edu/thirdcircuit_1998/218

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1998 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed September 9, 1998

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

NO. 97-1652

UNITED STATES OF AMERICA

v.

JAZZ HAYWOOD

        JAZZ HAYWOOD a/k/a
        TORRIE GRAHAM,
        Appellant

On Appeal From the United States District Court
For the Eastern District of Pennsylvania
(D.C. Crim. Action No. 94-cr-00497-8)

Argued: June 9, 1998

BEFORE: STAPLETON, COWEN and RENDELL,
Circuit Judges

(Opinion Filed September 9, 1998)

        Stephen J. Britt (Argued)
        Assistant U.S. Attorney
        615 Chestnut Street, Suite 1250
        Philadelphia, PA 19106
         Attorney for Appellee

        Mark D. Mungello (Argued)
        103 LaCosta Drive
        Blackwood, NJ 08012
         Attorney for Appellant

OPINION OF THE COURT

STAPLETON, Circuit Judge:

Jazz Haywood was convicted of conspiring to distribute heroin and distributing heroin within 1000 yards of a school. On direct appeal, Haywood seeks a new trial on the grounds that he was denied effective assistance of counsel. Haywood also argues that the government failed its burden of proof concerning the amount of drugs attributable to him and that the court erred by failing to order a hearing sua sponte on his competence to stand trial. We will affirm with respect to the ineffective assistance and sufficiency of the evidence claims but remand based on the court's failure to order a competency hearing.

I.

In 1992, the federal Drug Enforcement Agency initiated an investigation of an alleged heroin distribution ring, the "Nissan Heroin Organization" ("NHO"), and began surveillance of the corner of Birch and Hancock Streets in Philadelphia. On December 17, 1992, a DEA Agent purchased 19 packets of heroin from appellant Haywood at that location. Two years later, a federal grand jury indicted 24 people in a 51-count indictment. The indictment alleged that Haywood was a "shift worker" in a structured heroin distribution organization and charged him with conspiracy to distribute heroin in violation of 21 U.S.C. S 846, distribution of heroin in violation of 21 U.S.C.S 841(a)(1), and distribution of heroin within 1000 feet of an elementary school in violation of 21 U.S.C. S 860.

Haywood was arrested and trial was scheduled for April 1996. On April 1, Haywood exhibited psychiatric problems while awaiting trial at the Federal Correction Center in Fairton, New Jersey. The Fairton staff psychologist examined Haywood and concluded that he had "a psychotic condition that has become worse since October 1995 and is in need of attention in an acute forensic psychiatric setting." App. at 17. Consequently, the United States

Marshal's Service moved Haywood to the Philadelphia Detention Center. Haywood's trial counsel, James Garrett, informed the United States Attorney's Office that Haywood was on "suicide watch" at the Detention Center and that, in his opinion, Haywood was unable to participate in his own defense.

In response to these developments, the government asked the district court to order a competency examination for Haywood, and the court complied. On April 15 1996, the examining physician, Dr. Edward B. Guy, diagnosed Haywood as having schizophrenia and determined that he was not then competent to assist in his defense. Dr. Guy reported the following observations:

> During my evaluation, Mr. Haywood was very withdrawn, had great difficulty concentrating, and was a poor historian.
>
> He complained that he was hearing accusatory voices who were telling him to harm himself.
>
> He was very distracted during the interview and seemed to be responding to internal stimuli at times.
>
> He does not express any organized delusional system, but he is suspicious and fearful that he is going to be harmed.
>
> Mr. Haywood was not able to give abstract answers to proverbs and he also did poorly on similarity questions.
>
> He was so withdrawn that he could not participate in much of the mental status examination and it was difficult for me to maintain his focus on the questions I was asking. He does understand that he is in prison. He understands that he is charged by federal authorities on a drug charge, but he did not seem to know the details. At the same time, he understands the possible consequences of these charges to him, and he was able to answer questions about the functions of the various participants in a criminal trial situation.
>
> At the same time, his general functioning is compromised by his mental illness and his distractibility. I feel that his attorney will have difficulty

3

in working with him at this time in the preparation of a defense.

App. at 24-25. Dr. Guy also opined, however, that Haywood could "regain his competence with intensive treatment." App. at 25.

Dr. Guy served as Program Director of the Hahnemann University Correctional Mental Health Services Program. On his recommendation, Haywood was transferred to the Program's Inpatient Psychiatric Unit in the Philadelphia Prison System for treatment and observation. The court ordered a continuance of the trial.

On May 20, again on the government's motion, the court ordered another competency examination. In a letter dated that day and addressed to the trial judge, Dr. Guy reported that Haywood was still suffering from schizophrenia, that he was being treated daily with substantial doses of antipsychotic medication, and that he purported to lack an understanding of his legal circumstances. Dr. Guy also reported, without further explanation, that Haywood's attorney could expect "considerable frustration in trying to defend this young man." App. at 28. Nevertheless, Dr. Guy's professional opinion at that time was that Haywood "had a clearer understanding of his legal circumstances than he was willing to admit" (App. at 27) and that he was "competent to proceed" (App. at 28). The report concluded with the recommendation that Haywood's then current "treatment continue into the foreseeable future in order that he maintain his present level of functioning." Id.

The trial commenced nine weeks later without any further inquiry into Haywood's mental state. During trial, the court asked Haywood's counsel whether the defense intended to offer evidence. The following colloquy ensued:

> MR. GARRETT: . . . My client has told me that he is in no shape to testify.
>
> THE COURT: Very well. So, he's not going to testify?
>
> MR. GARRETT: No, he's not.
>
> THE COURT: Very well. All right.

App. at 30-31; N.T. 7/24/96 at 71-72.

4

The jury returned a guilty verdict on the conspiracy and "schoolyard" counts on July 25, 1996. Within a week, Haywood's counsel filed a motion for a new trial. In that motion, counsel represented that "Mr. Graham's psychological profile on the days of trial was such that he could not effectively participate in the defense of his case." Appellant's Br. at 8; Def.'s Mot. for Judgment of Acquittal or for a New Trial at P5. Despite counsel's representations to the court, at no time did he move for a competency hearing; nor did the court ever order such a hearing on its own motion.

In preparing the Presentence Investigation (PSI) Report, the probation officer estimated the total amount of drugs sold during the 25-month conspiracy and allocated the sales to the individual defendants according to a mathematical formula.1 In Haywood's case, the officer determined that Haywood was a member of the conspiracy for about 5-6 months, and that his shift distributed about 980 grams of heroin during that time period. Accordingly, the PSI Report recommended that Haywood be sentenced to 210-262 months imprisonment. Paragraph 123 of the PSI Report stated that there were no factors warranting a downward departure.

Haywood's counsel moved for a downward departure for significantly reduced mental capacity pursuant to USSG S 5K2.13.2 In attempting to determine whether Haywood

_____

1. Paragraph 52 of the PSI Report explained:

   Based on the evidence (buys, surveillance, video and audio recordings, proffers), it is estimated that the Nissan Heroin Organization sold approximately 700 bundles of heroin weekly. The following weekly sales percentages have been adduced through extrapolation, as to each individual shift: . . . night shift, 28%

or

   196 bundles . . . .

Each bundle contained 10 to 12 packets; each packet contained approximately 0.025 grams of heroin. PSI Rep. at 2 n.1.
2. USSG S 5K2.13 provides:

   If the defendant committed a non-violent offense while suffering from significantly reduced mental capacity not resulting from voluntary use of drugs or other intoxicants, a lower sentence may

be

   warranted to reflect the extent to which reduced mental capacity contributed to the commission of the offense, provided that the defendant's criminal history does not indicate a need for incarceration to protect the public.

indeed suffered from a significantly reduced mental capacity at the time of the offense, the court considered a psychiatric report made contemporaneously with the date of the offense. On October 30, 1992, Dr. Richard Saul observed that Haywood's social adjustment was within acceptable limits and that he was oriented as to time, person, and place. Nonetheless, Dr. Saul diagnosed Haywood as suffering from a "Schizoid Personality Disorder" and described his prognosis as guarded. Suppl. App. at 27–28.

The district court found that Haywood had established by a preponderance of the evidence that he suffered from a significantly reduced mental capacity at the time of his offense. However, it also found that Haywood had not shown that such reduced capacity contributed to the commission of the offense. Consequently, the district court reserved a ruling on the motion "pending a hearing and in anticipation of Dr. Guy's, Dr. Saul's or another expert's testimony regarding the likelihood that Schizoid Personality Disorder contributed to defendant's offense." App. at 34.

Haywood's counsel did not present the court with expert reports on the reduced capacity departure issue. He did present lay witnesses, Haywood's mother and his aunt, at the sentencing hearing who testified that Haywood had been afflicted with mental and emotional problems for much of his life. In its ensuing order, the district court made the following finding: "Based on Dr. Guy's two reports and my own observations, I conclude the defendant was suffering from a significantly reduced mental capacity at the time of trial." App. at 33. Nonetheless, the court also concluded that there was an insufficient showing of a nexus between Haywood's mental affliction and his offense, and denied the downward departure. The court sentenced Haywood to 210 months of imprisonment.

Haywood appeals his sentence, asserting that his counsel was ineffective because he failed to: (1) argue that Haywood was incompetent to stand trial; (2) present expert testimony that Haywood suffered from a significantly reduced mental capacity that contributed to his commission of the offense; and (3) object to statements in the PSI Report regarding the amount of drugs attributable to Haywood. Relatedly,

6

Haywood argues that the government failed to prove by a preponderance of the evidence the amount of drugs attributable to Haywood. Finally, Haywood assigns as error the trial court's failure to conduct a competency hearing pursuant to 18 U.S.C. S 4241.

II.

Claims of ineffective assistance of counsel generally are not entertained on direct appeal. See United States v. Theodoropoulos, 866 F.2d 587, 598 (3d Cir. 1989), overruled on other grounds by United States v. Price, 76 F.3d 526 (3d Cir. 1996). We have repeatedly held that "the proper avenue for pursuing such claims is through a collateral proceeding in which the factual basis for the claim may be developed." Id. "There is, however, a narrow exception to the rule that defendants cannot attack the efficacy of their counsel on direct appeal. Where the record is sufficient to allow a determination of ineffective assistance of counsel, an evidentiary hearing to develop the facts is not needed." United States v. Headley, 923 F.2d 1079, 1083 (3d Cir. 1991); see also Theodoropoulous, 866 F.2d at 598.

Nonetheless, Haywood's ineffective assistance claims do not fall within this exception. At oral argument, Haywood's counsel conceded that there is not enough information in the record upon which we could base a judgment of trial counsel's performance. We find this concession well-advised and thus affirm Haywood's conviction regarding his ineffective assistance claims. This disposition leaves Haywood free to pursue these claims in a habeas corpus proceeding under 28 U.S.C. S 2255.3

_____

3. Although Haywood has asked us to remand the case so that the district court might create a "fuller record" on the ineffective assistance
claims, see Appellant's Br. at 8,16,18, our case law establishes that this would be an inappropriate disposition. See Theodoropoulos, 866 F.2d at 598.

7

III.

At oral argument, Haywood's counsel advanced the claim that the government failed to prove by a preponderance of the evidence that 980 grams of heroin were attributable to Haywood. Although ordinarily we do not entertain arguments raised for the first time at oral argument, Haywood's belief that "there was no evidence in existence from which the Government could have proven by a preponderance of the evidence that Mr. Haywood was involved in the Nissan Heroin Organization (NHO) for a period of 5 to 6 months" was the explicit premise of one of his claims for ineffective assistance of counsel. Appellant's Br. at 17. Therefore, we will consider this argument.

Pursuant to the Federal Rules of Criminal Procedure, a district court, at a sentencing hearing, may accept the presence report as its findings of fact. Fed. R. Crim. Proc. 32(b)(6)(D). At the same time, the Rules afford a defendant numerous opportunities to object to the report's findings and recommendations. E.g., Fed. R. Crim. Proc. 32(b)(6)(B). At the sentencing hearing, the district court must rule on any unresolved objections to the presence report. The court must either make a finding on the issue or determine that no finding is necessary because it will not rely upon the controverted matter in sentencing the defendant. Fed. R. Crim. Proc. 32(c)(1).

The record reveals that at the sentencing hearing, the court asked Haywood and his counsel whether they had "any objections or comments on the presence report." Sentencing Tr. at 14. Haywood's counsel responded that they had both reviewed it and that "it appeared to be correct." Id. Accordingly, the court adopted the factual findings and guideline application in the PSI Report.

As we have previously held, "Information used as a basis for sentencing under the Guidelines must have `sufficient indicia of reliability to support its probable accuracy.'" United States v. Miele, 989 F.2d 659, 663 (3d Cir. 1993). We find that the information contained in the PSI Report contained the requisite indicia of reliability, and the court was thus justified in relying upon it as well as counsel's representations as to its accuracy. Regarding the amount of drugs attributable to Haywood, the PSI Report stated:

> Jazz Haywood . . . was a seller of heroin during the
> night shift and was a member of the NHO for a period
> of 5 to 6 months. Haywood is being held responsible
> for 980 grams of the heroin distributed during the
> night shift.

PSI Rep. at P 60. Additionally, paragraph 94 of the PSI
Report indicated that police had observed Haywood
conducting a cocaine transaction at 2930 Hancock Street
on May 14, 1992, which was seven months before his sale
of heroin to the undercover agent. In connection with that
incident, Haywood was convicted of knowingly possessing a
controlled substance and possessing a controlled substance
with intent to distribute. Thus, there was evidence in the
PSI Report to support its finding that Haywood was a
member of the NHO for at least 5 to 6 months. In contrast,
there was nothing in the PSI Report that undermined this
finding. Nor did Haywood or his trial counsel indicate to the
court that there was any reason to doubt the information
contained in the PSI Report. In short, we find that sufficient
indicia of reliability supported the PSI Report's conclusion
that Haywood had been a member of the NHO for 5 to 6
months and was, therefore, responsible for 980 grams of
heroin; hence, the trial court's adoption of the PSI Report's
finding was not error.

IV.

Title 18 U.S.C. S 4241 provides in pertinent part:

> (a) Motion to determine competency of defendant.--At
> any time . . . prior to the sentencing of the defendant,
> the . . . court shall grant [a motion for a competency
> hearing], or shall order such a hearing on its own
> motion, if there is reasonable cause to believe that the
> defendant may presently be suffering from a mental
> disease or defect rendering him mentally incompetent
> to the extent that he is unable to understand the
> nature and consequences of the proceedings against
> him or to assist properly in his defense.

> (b) Psychiatric or psychological examination and report.
> --Prior to the date of the hearing, the court may order

that a psychiatric or psychological examination of the defendant be conducted . . . .

* * *

(d) Determination and disposition.--If, after the hearing, the court finds by a preponderance of the evidence that the defendant is presently suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense, the court shall commit the defendant to the custody of the Attorney General. The Attorney General shall hospitalize the defendant for treatment in a suitable facility--. . . .

(e) Discharge.--When the director of the facility in which a defendant is hospitalized pursuant to subsection (d) determines that the defendant has recovered to such an extent that he is able to understand the nature and consequences of the proceedings against him and to assist properly in his defense, he shall promptly file a certificate to that effect with the clerk of the court that ordered the commitment. . . . The court shall hold a hearing . .. to determine the competency of the defendant. If, after the hearing, the court finds by a preponderance of the evidence that the defendant has recovered to such an extent that he is able to understand the nature and consequences of the proceedings against him and to assist properly in his defense, the court . . . shall set the date for trial.

Section 4241 provides a mandatory process. The steps in that process are intended to culminate in a record-based judicial determination of competence in every case in which there is reason to doubt the defendant's competence to stand trial. The Due Process Clause of the Constitution requires no less. See Pate v. Robinson, 383 U.S. 375, 385 (1966); United States v. DiGilio, 538 F.2d 972, 987 (3d Cir. 1976).

Under subsection (a), a district court has a duty to order a competency hearing sua sponte "at any time prior to the

10

sentencing of the defendant . . . if there is reasonable cause to believe that the defendant may presently be suffering from a mental disease or defect rendering him mentally incompetent." Under subsection (b), the court may order "a psychiatric . . . examination" to provide evidence for the hearing. Under subsection (d), if a preponderance of the evidence at the hearing indicates that he or she is incompetent, the defendant will be hospitalized for treatment in a suitable facility. Finally, under subsection (e), if the director of the facility subsequently certifies that the defendant is then competent, the court has a duty to hold a hearing sua sponte to determine if "the defendant has recovered to such an extent that he is able to understand the nature and consequence of the proceedings against him and to assist properly in his defense."

Here, the district court expressly invoked the authority of section 4241(b) and ordered a psychiatric examination into Haywood's competency to stand trial. Dr. Guy's April 15th report expressed the opinion, supported by clinical observation and history, that Haywood was suffering from schizophrenia and was incompetent to stand trial. The government does not, and could not, contend that this document failed to provide the "reasonable cause" that makes a hearing mandatory under subsection (a). While the district court did not conduct a hearing, on the basis of Dr. Guy's report and without objection from the government, it did authorize the transfer of Haywood's custody to Hahnemann's Inpatient Psychiatric Unit in the Philadelphia Prison System. Thirty-five days later, the director of that facility supplied an updated report representing that Haywood had become competent to stand trial. Thereafter, on at least two occasions prior to sentencing, the court received additional information suggesting that Haywood might not be competent to proceed. No hearing was ever held, however, to provide an evidentiary basis for a judicial finding of competence and no such finding was ever made.

We conclude that under these circumstances section 4241 required the district court to order a hearing on Haywood's competency and thereafter to make a finding of competence before proceeding to trial. Under that statute, receipt of Dr. Guy's April 15th report imposed a duty on the

11

district court to hold a competency hearing. Assuming that it was relieved of the duty to do so immediately by its belief in the accuracy of the report and the government's tacit consent, the court was not free to dispense entirely with the requisite hearing and finding based solely on an expert's opinion that Haywood's mental condition had improved. Subsection (e) of section 4241 expressly assumes the existence of an expert opinion that the defendant is competent and nevertheless mandates in no uncertain terms that a hearing be held and a finding made.

We are mindful of the fact that the psychiatrist giving the opinion upon which the court relied in proceeding to trial was the same professional who provided "reasonable cause" to believe Haywood might be incompetent. A trial court might conceivably be justified in proceeding to trial without a hearing when error is confessed and the opinion giving "reasonable cause" is withdrawn by the psychiatrist for credibly explained reasons. This is not such a case, however. Dr. Guy did not withdraw his April 15th opinion; rather his opinion was that Haywood's condition had been improved with treatment. Indeed, we believe the circumstances of the May 20th opinion and events at trial rendered the need for a judicial determination particularly compelling in this case. The reported change in condition was attributed to a scant thirty-five days of treatment and the opinion that Haywood was competent was predicated on a credibility judgment -- Dr. Guy's disbelief of Haywood's insistence that he lacked a clear understanding of the nature and consequences of the proceedings against him. Further, the trial then commenced on July 23, 1996, after the passage of an additional nine weeks, during which Haywood's mental condition could well have changed. Given these facts and the additional information received by the court in the subsequent proceedings, the integrity of the court's judgment was seriously impaired by the absence of an independent judicial inquiry into Haywood's competency as close to the time of trial as possible.

Having determined that the court erred in not conducting a competency hearing, we turn to the question of the appropriate remedy. We have previously addressed this issue in United States v. Renfroe, 825 F.2d 763 (3d Cir.

12

1987), where we also concluded that there was reasonable cause to question the defendant's competency at trial and sentencing, and that the district court erred in not conducting a competency hearing. We there questioned whether it would be appropriate to remand for a hearing to determine the defendant's competency at the time of his trial rather than for a new trial. We gave only conditional approval to that approach:

> Given the inherent difficulties in retrospective competency determinations, such nunc pro tunc evaluations are not favored.
>
> However, such a determination may be conducted if a meaningful hearing on the issue of the competency of the defendant at the prior proceedings is still possible. The district court is in the best position to determine whether it can make a retrospective determination of [the defendant's] competency during his trial and sentencing. Here, because of the sparse testimony before the district court, we envision the taking of additional testimony to inform the district court's determination in that regard.
>
> If the court concludes that a retrospective determination is still possible, a competency hearing will be held, and if the conclusion is that [the defendant] was competent, no new trial will be required. If the district court determines that a meaningful hearing is no longer possible, [the defendant's] conviction must be overturned and a new trial may be granted when he is competent to stand trial.

825 F.2d at 767-68 (citations omitted).

We will remand so that the court can make the determinations called for in Renfroe.

CONCLUSION

We decline to adjudicate Haywood's ineffective assistance of counsel claims. We will affirm the district court's determination of the quantity of drugs to be attributed to Haywood. We conclude, however, that the district court

13

erred in failing to conduct a hearing and make a finding regarding Haywood's competence to stand trial. We will remand with instructions that the district court evaluate whether a retrospective determination of Haywood's competency to stand trial would be reasonably reliable. If the court concludes that a reliable retrospective determination is still possible, a competency hearing should be held. If the court determines that such a determination is no longer possible, Haywood's conviction must be overturned. In that event, a new trial may be held when he is found competent.

A True Copy:
Teste:

Clerk of the United States Court of Appeals
for the Third Circuit

14