NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 10-3439
_____

UNITED STATES OF AMERICA

v.

REGINA TOLLIVER,
                              Appellant
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
D.C. Criminal No. 08-cr-00026-001
(Honorable Berle M. Schiller)
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
September 13, 2011

Before: SLOVITER, SCIRICA and SMITH, *Circuit Judges*.

(Filed:  September 15, 2011)
_____

OPINION OF THE COURT
_____

SCIRICA, *Circuit Judge*.

    Regina Tolliver was convicted by a jury of bank fraud, aggravated identity theft,

and unauthorized access of a computer, in violation of 18 U.S.C. §§ 1344, 1028A, and

1030, respectively.  She was sentenced to 30 months' imprisonment and a five-year term

of supervised release. Tolliver was ordered to pay restitution of $181,577 and a special assessment of $900. We will affirm.

I.

A.

Between March and November 2007 two different "check runners" cashed fraudulent checks against the accounts of seven Citizens Bank customers in branches in upstate New York, western Pennsylvania, and Delaware.[1] The checks were drawn on banks other than Citizens Bank and were rejected as fraudulent. Initially the Citizens Bank customers were charged the checks' face value. However, once it was determined the customers were the victims of fraud, Citizens Bank credited their accounts and absorbed the total loss of $181,577.

At the time of the fraud, Citizens Bank used computer systems to manage and track its customer accounts. The systems contained customers' personal information, including names, addresses, dates of birth, Social Security numbers, driver's license numbers, and Citizens Bank account numbers and balances. Bank employees could access this information in either the mainframe or touch point computer systems by entering their employee number and password.[2]

---

[1] A check runner is member of a bank fraud scheme who is responsible for cashing fraudulent checks at a bank. Eileen Comire and Richard Maden were identified as the check runners in the scheme in which Tolliver was involved. They were indicted separately, and each entered guilty pleas. Neither testified at Tolliver's trial.

[2] The mainframe system is the basic system to which tellers would generally have access. The touch point system is the platform to which customer service and management staff would have access. The touch point system allows employees to access customers by

2

Testimony at trial revealed that Citizens Bank employees are assigned a non-confidential employee number and then choose their passwords. Employees are instructed to keep their passwords secure, confidential, and not to write them down. Employees are not allowed to share their passwords with anyone else, including each other. If someone believes that another person has learned of his password, he is required to inform management and change the password. If an employee must leave a computer terminal where he is working, the employee is required to temporarily lock the terminal or sign off completely. Employees use their passwords between ten and fifteen times a day and are required to change them every two to three months.

When an employee accesses either the mainframe or touch point systems, data concerning the activity is archived in an employee tracking system for approximately six months. This system is known as the "employee footprint" and can be recalled to determine the employee number entered to access certain accounts. Citizens Bank senior fraud investigator Todd Swoyer ran a footprint report for each of the compromised accounts. He discovered that Tolliver's employee number was the only one that was associated with each of the accounts. In addition, his investigation showed that, with one exception, after Tolliver's number and password were entered to look up account information, someone called the Citizens Bank automated system to check the accounts. These calls were made either the day after the accounts were accessed or a few days to

name or account number and provides a brief history of the customer, including personal information, account numbers, and balances.

3

weeks before the fraudulent checks were cashed against them.  All five of the victims who testified said they did not make these calls.

Swoyer's investigation revealed that the seven customers' accounts were accessed under Tolliver's employee number on February 5 and 8, 2007, and on March 7, 8, and 9, 2007.  The Citizens Bank information technology service determined that on February 5 accounts from the first three victims were compromised from the King of Prussia Mall branch where Tolliver was employed.[3]  Attendance records confirmed that only Tolliver and branch assistant manager Angela Anderson worked on all of these days.  Anderson testified she never knew Tolliver's password and never signed into a computer terminal someone else was already using.

During the time of the investigation, Citizens Bank employees who contacted a customer during the business day were required to record it in their logbook. Tolliver's logbook did not show that she contacted any of the seven victims for business purposes on the dates their accounts were accessed.  Tolliver was also not assigned to contact any of these individuals for sales purposes on those dates.  Citizens Bank employees were not permitted to look at a customer's account and personal information without a business purpose.

Swoyer, United States Postal Inspector Frank Busch, and a Secret Service agent interviewed Tolliver on March 15, 2007.  Swoyer testified that he reviewed Tolliver's entire logbook with her during her interview.  Her book included a page that had

---

[3] It was not determined from which Citizens Bank branch accounts were accessed on the other four days.

passwords written on it. Swoyer testified that the passwords were for HR Express, a system unrelated to the mainframe or touch point systems. Further, he stated that Tolliver told him that she had not given her password to anyone and that she always logged off her computer when she walked away from a terminal. All seven of Tolliver's former co-workers who testified said they never knew her password or saw it written down. Tolliver was terminated immediately following her interview.

On January 17, 2008, Tolliver was indicted on one count of bank fraud, and aiding and abetting bank fraud, in violation of 18 U.S.C. § 1344; seven counts of aggravated identity theft, and aiding and abetting aggravated identity theft, in violation of 18 U.S.C. § 1028A; and one count of access of a computer in excess of authorization to obtain a financial record, in violation of 18 U.S.C. § 1030. She was the only defendant charged in the indictment.

B.

At trial, the Government called United States Postal Inspector Frank Busch to testify as an expert on the operation of bank fraud schemes. Busch had over fourteen years of experience investigating financial crimes with the United States Postal Inspection Service. He received extensive training in criminal financial investigations from multiple agencies, including the United States Attorney's Office and the International Association of Financial Crimes Investigators. He estimated that he had completed 1000 fraud and identity theft investigations and acted mainly as lead investigator in such matters. He stated he investigated hundreds of bank fraud and

5

identity theft cases in Philadelphia, including twenty involving bank employees. Defense counsel did not object to Busch testifying as an expert witness.

Busch testified that there are certain players involved in a typical bank fraud/identity theft scheme: a designated ringleader; a second in command who facilitates recruiting other members; individuals, such as bank employees, who access personal information of account holders to use in the scheme; individuals who access or create counterfeit documents; drivers who take check runners to the banks; and check runners who cash the checks. According to Busch, a bank employee who was part of a scheme usually would be in touch with the ringleader of the operation or the middle man who recruited him, but would not have contact with the check runners. In Busch's experience, check runners generally did not know the identity of the person who was obtaining the information necessary to facilitate the crime.

Busch explained that a bank employee involved in a fraudulent scheme would access personal information about an account holder, write it down or print it out, and then pass it along to other members of the operation in exchange for money. He testified that it is common for someone in the scheme to call a bank's automated system to confirm that the targeted accounts are active and functioning properly.

Tolliver did not testify at trial. She was found guilty by the jury of all charges. Following her conviction, she submitted a motion seeking judgment of acquittal and/or a new trial, contending that the prosecution's evidence was insufficient to support the

6

jury's verdict and the government improperly shifted the burden of proof to her.[4]  The

District Court denied the motions.  After being appointed new counsel,[5] Tolliver filed a

supplemental motion for judgment of acquittal and/or motion for a new trial.  Tolliver

again challenged the sufficiency of the evidence.  She also asserted that her trial

counsel's performance was constitutionally ineffective and that the District Court

committed plain error by allowing Inspector Busch's expert testimony.  The District

Court denied both motions.

## II.

Tolliver raises four issues on appeal. [6]  She contends (1) there was insufficient

evidence to support the jury's verdict; (2) the District Court erred by allowing Inspector

Busch's expert testimony on the modus operandi of bank fraud schemes; (3) the District

Court erred by determining her trial counsel was not constitutionally ineffective for

failing to object to Inspector Busch's testimony; and (4) the District Court erred by

denying her post-trial motions for judgment of acquittal and for a new trial pursuant to

Fed. R. Crim. P. 29 and 33, respectively.

## A.

---

[4] Tolliver had previously moved for a judgment of acquittal after the close of the prosecution's case.  The motion was denied.

[5] After Tolliver's trial counsel failed to submit a sentencing memorandum for her sentencing hearing, the District Judge held an in-chambers conference with both the prosecution and defense.  Afterwards he informed Tolliver he would reschedule the sentencing to another date and would appoint her new counsel.  The Court then appointed Tolliver's present counsel.

[6] The District Court had jurisdiction under 18 U.S.C. § 3231, and we exercise appellate jurisdiction under 28 U.S.C. § 1291.

Tolliver contends the government failed to prove beyond a reasonable doubt that it was she who used her employee information to access the victims' accounts.[7] Specifically, she contends there was no evidence to show from which Citizens Bank branch victims' accounts were accessed on four out of the five days in question. Nor was there evidence that the accounts were accessed from a specific computer terminal that Tolliver was using. In addition, Tolliver claims there was no proof that she had any knowledge or connection to other members in the bank fraud, or that she had a romantic or financial motive to participate in the scheme. Nonetheless, there was sufficient evidence to find her guilty.

### 1. Bank fraud

The government needed to prove beyond a reasonable doubt that Tolliver "knowingly execute[d], or attempt[ed] to execute a scheme or artifice (1) to defraud a financial institution; or (2) to obtain any of the moneys, funds, credits, assets, securities, or other property owned by, or under the custody or control of, a financial institution, by means of false or fraudulent pretenses, representations or promises." 18 U.S.C. § 1344. "[W]here the bank is a direct target of the deceptive conduct or scheme, § 1344 is satisfied by proof of a specific intent to defraud the bank plus fraudulent conduct (e.g.,

---

[7] We "apply a particularly deferential standard of review when deciding whether a jury verdict rests on legally sufficient evidence." *United States v. Dent*, 149 F.3d 180, 187 (3d Cir. 1998). We view the evidence in the light most favorable to the government, however "[i]t is not for us to weigh the evidence or to determine the credibility of the witnesses." *Id.* (quoting *United States v. Voigt*, 89 F.3d 1050, 1080 (3d Cir. 1996)). Considering the evidence in this light, together with "inferences logically deducible therefrom," we must determine whether a rational trier of fact could have found guilt beyond a reasonable doubt. *United States v. McNeill*, 887 F.2d 448, 450 (3d Cir.1989).

8

misrepresentations) which creates an actual loss or risk of loss." *United States v. Leahy*, 445 F.3d 634, 646 (3d Cir. 2006). To convict Tolliver of aiding and abetting bank fraud, the government had to prove: "(1) that [bank fraud] ha[d] been committed; and (2) that [Tolliver] knew of the commission of the [bank fraud] and acted with intent to facilitate it." *United States v. Soto*, 539 F.3d 191, 194 (3d Cir. 2008).

When viewed in the light most favorable to the government, the evidence, and its corresponding inferences, were sufficient for a rational jury to convict Tolliver of bank fraud and of aiding abetting bank fraud. The government proved that Tolliver's employee number was the only one that was used to look up confidential information for all of the victims' accounts. Further, the accounts were accessed on five days that only Tolliver and one other employee worked at the King of Prussia Mall branch. That employee testified she did not know Tolliver's password and never used a computer terminal that someone was already using. This testimony jibes with what Tolliver told investigators during her interview, to wit, that she always logged out of her computer when she left a terminal and she never gave her password to anyone. This all supports the conclusion that it was Tolliver who accessed the accounts. That she had no business purpose for doing so, that her access was soon followed by phone calls to check the accounts, and that individuals later cashed fraudulent checks against the accounts support the inference that Tolliver's access was the first step in a "fraudulent scheme that placed the bank at a risk of loss." *United States v. Khorozian*, 333 F.3d 498, 505 (3d Cir. 2003). Since "§ 1344's specific intent requirement is satisfied if an individual commits an act that could put the bank at a risk of loss," *id.,* the government established that Tolliver had

9

the requisite intent to facilitate the bank fraud. These findings support not only the conviction for bank fraud but the conviction for aiding and abetting the crime as well.

Tolliver contends that the existence of a page in her logbook containing passwords and the potential for employees to log in to multiple computers at once undermine the jury's verdict. We disagree. First, there was nothing at trial to suggest Tolliver's password had been compromised. Further, "evidence does not need to be inconsistent with every conclusion save that of guilt if it does establish a case from which the jury can find the defendant guilty beyond a reasonable doubt." *United States v. Sandini*, 888 F.2d 300, 311 (3d Cir. 1989) (quoting *United States v. Cooper*, 567 F.2d 252, 254 (3d Cir.1977)). Because a rational trier of fact could have inferred from the evidence that Tolliver committed the bank fraud, it is not necessary that all other potential inferences be excluded. "There is no requirement . . . that the inference drawn by the jury be the only inference possible or that the government's evidence foreclose every possible innocent explanation." *United States v. Iafelice*, 978 F.2d 92, 97 n.3 (3d Cir. 1992). Therefore we will affirm the bank fraud convictions.

## 2. *Aggravated identity theft*

To convict Tolliver of aggravated identity theft, the government had to prove that she "knowingly transfer[red], possesse[d], or use[d], without lawful authority, a means of identification of another person" during the commission of bank fraud. 18 U.S.C. § 1028A(a)(1), (c). For her charge of aiding and abetting, the government was required to prove: "(1) that [identity theft] ha[d] been committed; and (2) that [Tolliver] knew of the

10

commission of the [identity theft] and acted with intent to facilitate it." *Soto*, 539 F.3d at 194.

There was sufficient evidence to support Tolliver's aggravated identity theft convictions. The government showed that Tolliver's employee number was used to access the victims' account information and that she had no legitimate business purpose to do so. The government also showed that someone later called the Citizens Bank phone system to check these accounts, and two people eventually cashed false checks against them. A rational jury could infer from this that Tolliver accessed the customer accounts and then passed the information along to someone else to further the bank fraud scheme. These inferences would support the aggravated identity theft convictions.

Tolliver contends that the fact that the check runners did not implicate her undermines the validity of the verdict. However, Inspector Busch's testimony made clear that check runners typically do not know the bank employee "insider" who supplies information because the employee has a coveted position within the scheme and deals with someone higher in the chain of command. Though Tolliver is correct that Inspector Busch also testified that a typical bank fraud involves more individuals than just a bank insider, check runners, and someone who calls to check on the accounts, the lack of evidence of other actors in the present case does not negate the jury's verdict. The jury was free to focus on the similarities between the evidence presented and a typical scheme rather than the differences. Furthermore, there was a "logical and convincing connection between the facts established and the conclusion inferred." *McNeill*, 887 F.2d at 450. We will affirm the jury's verdict accordingly.

11

### 3. Unauthorized access of a financial record

To prove Tolliver was guilty of unauthorized access of a financial record, the government was required to establish that she "intentionally accesse[d] a computer without authorization or exceed[ed] authorized access, and thereby obtain[ed] . . . information contained in a financial record of a financial institution." 18 U.S.C. § 1030(a)(2)(A) (2008). "Actual asportation, in the sense of physically removing the data from its original location or transcribing the data, need not be proved in order to establish a violation of [subsection 1030(a)(2)]." S. Rep. No. 99-432 at 2484 (1986).

As already discussed, there was sufficient evidence from which to infer that Tolliver intentionally accessed the customers' accounts and that she did not have a business purpose to do so. As such, the government established that Tolliver exceeded her authorized access, and we will affirm her conviction for this offense.

We conclude that all of Tolliver's convictions were premised on sufficient evidence, and thus we will deny her request for relief on this ground. We also will affirm the District Court's denial of Tolliver's motion for judgment of acquittal and/or a new trial based on insufficiency of the evidence.

### B.

Tolliver contends the District Court committed plain error by allowing Investigator Busch to testify as an expert witness on the modus operandi of bank fraud schemes because the testimony violated Fed. R. Evid. 702, 403, and the Confrontation

12

Clause of the Sixth Amendment.[8] Specifically, she claims Busch's testimony lacked foundation and fit because many of the features of a typical bank fraud scheme, including the existence of a broad network of offenders, were absent from her case. As such, she says the danger of unfair prejudice outweighed the probative value of Busch's remarks. Tolliver also claims Busch's testimony was based on out-of-court statements that were offered for their truth and that were made by individuals who were shielded from cross examination. By failing to limit Busch's testimony to the facts of the case, Tolliver argues the District Court erred and a new trial should be granted. We disagree.

Fed. R. Evid. 702 "embodies a trilogy of restrictions on expert testimony: qualification, reliability and fit." *Schneider v. Fried*, 320 F.3d 396, 404 (3d Cir. 2003). Regarding fit, expert testimony "must be relevant for the purposes of the case and must assist the trier of fact." *Id.* In other words, it must be "sufficiently tied to the facts of the case that it will aid the jury in resolving a factual dispute." *United States v. Downing*, 753 F.2d 1224, 1242 (3d Cir. 1985).

Inspector Busch's testimony was both relevant and adequately linked to the facts of the case to be helpful to the jury. Tolliver was charged with participating in a bank fraud scheme involving identity theft, and Busch testified about the typical features of such an operation. Several of these features, including the participants, their relationship, and the timing of events, were present in Tolliver's case. That all of the features were not

---

[8] The decision to correct a plain error is within the discretion of the court of appeals. *United States v. Olano*, 507 U.S. 725, 732 (1993). We will not grant relief unless the District Court committed clear or obvious errors that "seriously affect[ed] the fairness,

13

in evidence does not mean that Busch's testimony lacked fit. Fitness speaks "primarily to relevance" and requires that "evidence or testimony 'assist the trier of fact to understand the evidence or to determine a fact in issue.'" *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 591 (1993) (quoting Fed. R. Evid. 702). Busch's testimony provided information to assist the jury in understanding how a bank employee who improperly accessed customer accounts could be related to individuals who subsequently cashed fraudulent checks against them. It was thus helpful and sufficiently related to both the facts and issues to be admissible under Fed. R. Evid. 702.

Tolliver contends that Busch's remarks should nonetheless have been excluded because they unfairly prejudiced the jury. She claims his testimony was offered to fill evidentiary gaps in the prosecution's case and to support the inference that she acted consistently with the behavior of someone involved in a typical bank fraud. Further, because Busch was one of the agents who investigated Tolliver, the jury was misled to believe he had information not presented to them. We disagree.

Under Fed. R. Evid. 403, relevant evidence should not be allowed if "its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury." Most of Busch's testimony concerned the nature of a typical bank fraud scheme involving identity theft. He discussed Tolliver's case only to respond to defense counsel's questions regarding the absence of certain features common to other investigations, and to explain, in general terms, the scope of the broader bank

---

integrity or public reputation of judicial proceedings." *Id.* (internal quotation marks omitted).

14

fraud of which Tolliver's case was thought to be a part. Busch did not offer any opinions about whether he thought Tolliver's case was typical or whether she was guilty. Though Busch was both an expert witness and a case agent, he did not stray from relevant topics or offer sweeping conclusions about Tolliver's activities. *See United States v. Dukagjini*, 326 F.3d 45, 54 (2d Cir. 2002). Thus we conclude that his testimony was neither prejudicial nor misleading, and its probative value outweighed any danger of confusion.

Tolliver's final contention is that Busch's testimony violated the Confrontation Clause. Busch referenced interviews with people from past investigations when responding to questions from both the prosecution and defense. Tolliver claims these remarks were prejudicial and should have been excluded. We disagree.

The Supreme Court has held that, with limited exceptions, the Sixth Amendment bars out-of-court testimonial statements of absent witnesses. *Crawford v. Washington*, 541 U.S. 36, 53-4 (2004). Regarding experts, the Fourth Circuit has found that *Crawford* "in no way prevents [them] from offering their independent judgments merely because those judgments were in some part informed by their exposure to otherwise inadmissible evidence." *United States v. Johnson*, 587 F.3d 625, 635 (4th Cir. 2009). Only "where the [expert] witness is used as little more than a conduit or transmitter for testimonial hearsay" would his reliance on inadmissible hearsay become problematic. *Id.* "The question is whether the expert is, in essence, giving an independent judgment or merely acting as a transmitter for testimonial hearsay." *Id.*

Busch was not simply a means of passing impermissible hearsay to the jury. He was an expert who testified on a range of topics concerning bank fraud and identity theft

15

schemes. The times he did specifically reference interviews from past investigations it was clear his answers "derived over many years and from multiple sources." *Id.* at 636. He was not simply parroting witnesses' out-of-court testimonial statements, but rather applying his own expertise to answer the questions posed to him by counsel. *Id.* at 635. Further, his responses did not suggest that he was relying on information supplied by informants associated with his investigation of Tolliver.[9] Because Busch's remarks were based on his extensive experience and were subject to cross examination during which counsel could explore his sources, his testimony did not violate the Confrontation Clause.

We conclude that allowing Busch's testimony did not "seriously affect the fairness, integrity or public reputation of judicial proceedings." *Olano*, 507 U.S. at 732 (internal quotation marks omitted). Thus, the District Court did not commit plain error, and we will deny Tolliver's request for relief on that ground.

C.

Tolliver's final contention is that she deserves a new trial because her trial counsel was constitutionally ineffective. She claims that her counsel should have requested information regarding the foundation for Busch's opinions beyond what was disclosed in the government's letter disclosure pursuant to Fed. Crim. P. 16(a)(1)(G). Similarly,

---

[9] During cross examination, counsel asked Busch if there was evidence that Tolliver had contacted any "bad guys." Busch said the investigators received information that Tolliver had been contacting Jeffrey Thomas. Through follow-up questions, defense counsel elicited that Thomas was being investigated but had not been arrested as part of the case. There was no other testimony about Thomas. During re-direct examination, and upon defense counsel's objection, the Court asked Busch whether anyone other than the two check runners had been arrested and had any connection to Tolliver. Busch answered no.

16

counsel should have raised more questions or offered more objections to Busch's testimony during trial. By failing to take these steps, Tolliver claims her counsel did not subject the prosecution's case to "meaningful adversarial testing." *Kansas v. Ventris*, 129 S. Ct. 1841, 1845 (2009) (quoting *United States v. Cronic*, 466 U.S. 648, 656 (1984)).

In general, we will not entertain claims of ineffective assistance of counsel on direct appeal. *United States v. Haywood*, 155 F.3d 674, 678 (3d Cir. 1998). "We have repeatedly held that the proper avenue for pursuing such claims is through a collateral proceeding in which the factual basis for the claim may be developed." *Id.* (internal quotation marks omitted). However, there is a narrow exception for cases in which the record is sufficiently robust as to allow a determination on the merits without the benefit of an evidentiary hearing. *See id.* Although both parties contend the record contains enough information on which to base a conclusive assessment of trial counsel's performance, we think the most prudent course is to bring Tolliver's claim up on collateral review. This disposition leaves Tolliver free to pursue her ineffective assistance claim in a proceeding under 28 U.S.C. § 2255.

### III.

For the foregoing reasons, we will affirm the judgment of the District Court. If Tolliver elects to pursue her ineffective assistance of counsel claim further, she may do so within the framework of a collateral review proceeding.

17