NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 12-1753
_____

EDDY C. CHERYS, Appellant

v.

UNITED STATES OF AMERICA
_____

On Appeal from the District Court
of the Virgin Islands
(D.C. No. 3-01-cv-00213)
District Judge:  Honorable Curtis V. Gomez
_____

Argued December 10, 2013
Before:  FISHER, COWEN and NYGAARD, *Circuit Judges*.

(Filed: January 9, 2014 )

Joseph A. DiRuzzo, III, Esq.  **(ARGUED)**
Fuerst Ittleman David & Joseph
1001 Brickell Bay Drive
32nd Floor
Miami, FL 33131

Nelson L. Jones, Esq.  **(ARGUED)**
Office of United States Attorney
5500 Veterans Building, Suite 260
United States Courthouse
St. Thomas, VI 00802-6924

_____

OPINION OF THE COURT
_____

FISHER, *Circuit Judge*.

Appellant Eddy Calisse Cherys appeals from the District Court of the

Virgin Islands' dismissal of his motion pursuant to 28 U.S.C. § 2255, challenging his

conviction for conspiracy to commit drug trafficking on the grounds that he was legally

incompetent at the time of his trial. Specifically, he argues that his Sixth Amendment

right to the effective assistance of counsel was violated by his trial attorney's failure to

request a competency hearing, and that his Fifth Amendment right to due process was

violated because he was tried and convicted while incompetent. For the reasons that

follow, we will affirm.

I

We write principally for the parties, who are familiar with the factual context and

legal history of this case. Therefore, we will set forth only those facts necessary to our

analysis.

On January 8, 1998, a Virgin Islands grand jury returned a three-count indictment

against Cherys and two codefendants. After a jury trial that took place from October 5

through October 9, 1998, Cherys was convicted of conspiracy to possess with intent to

distribute cocaine in violation of 21 U.S.C. §§ 841(a)(1) and 846 (Count I), and

possession with intent to distribute cocaine in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A)(ii)(II) (Count III).  He was sentenced to 188-month terms of imprisonment on each count, to run concurrently. On direct appeal, we vacated Cherys's conviction on Count III for insufficient evidence and affirmed it on Count I. *United States v. Cherys*, 250 F.3d 736 (3d Cir.) (unpublished opinion), *cert. denied*, 534 U.S. 897 (2001).

Cherys timely filed a motion to vacate his sentence under 28 U.S.C. § 2255 on November 4, 2001.  The District Court denied Cherys's § 2255 motion without a hearing and declined to issue a Certificate of Appealability ("COA").  We granted a COA and remanded to the District Court with instructions to hold a hearing on Cherys's claim that his counsel was constitutionally ineffective for failing to request a competency hearing prior to or during trial, or prior to sentencing.  *Cherys v. United States*, 405 F. App'x 589, 592 (3d Cir. 2011).

The District Court held an evidentiary hearing on December 14, 2011, at which it heard testimony from Cherys and his trial counsel, Anna Paiewonsky.  Cherys testified that he was held in pretrial detention at Guaynabo Metropolitan Detention Center in San Juan, Puerto Rico. He testified that on September 23, 1998, about two weeks before his trial began, he suffered a psychotic episode in which he hallucinated that he was communicating with Jesus or God.  Cherys was placed in the Special Housing Unit ("SHU") because of this episode.  On October 2, 1998, Dr. Jose Gomez, a psychiatrist, diagnosed his condition as "schizoaffective disorder, bi-polar type – axis I," and

prescribed Risperidone, an antipsychotic medication. JA at 55-57. After Cherys's trial Dr. Gomez added prescriptions for Lithium and Depacote. Cherys testified that his hallucinations did not abate through the course of the trial, and that he experienced side effects from the Risperidone including dizziness and drowsiness. He claimed to have informed Paiewonsky of his problems during trial, but she testified to the contrary.

The record reflects that after Cherys was convicted but before he was sentenced, he sent a letter apprising the District Court of his mental health problems. This letter, received by the Court on October 13, 1998, was introduced at the evidentiary hearing on his § 2255 motion. Though difficult to read, Cherys's letter appears to state that he was medicated from September 29, 1998 to October 12, 1998. Three days after sending the letter he filed a pro se motion for a new trial on the grounds that counsel took "him to trial under medication for depress [*sic*] and that the tablets was [*sic*] making him sleep" during the trial. JA at 160.

At the hearing, Paiewonsky testified that she had never seen either document prior to the proceedings on Cherys's § 2255 motion, that she had no knowledge prior to or during trial that Cherys was suffering psychotic episodes, that he never expressed to her that he was suffering from side effects of his medication, and indeed that she was unaware that he was taking antipsychotic medications. She testified that she met with him "several times" prior to trial, including immediately before trial began, and "every day in the courtroom" during the course of the trial. JA at 127, 129. At no point did she

4

notice anything abnormal about Cherys's behavior, though she admitted that she had heard, without corroboration, that he had once attempted to commit suicide. Paiewonsky testified that her ability to interact with Cherys during trial was limited because he had to sit behind her, rather than next to her, due to the small size of the courtroom in which the trial occurred.

On September 15, 2011 – before the evidentiary hearing – Cherys filed an amended motion for summary judgment.[1] Shortly thereafter on November 7, 2011, fearing that he would be deported before the District Court could issue its ruling, Cherys filed a motion to vacate his sentence under Federal Rule of Civil Procedure 60, or alternatively, requested a writ of audita querela. Then, on November 21, 2011, he moved to convert his § 2255 motion to a petition for a writ of error coram nobis. The Government noticed its intent to deport Cherys on December 1, 2011, and on December 14, 2011 – the day of the evidentiary hearing – Cherys moved to stay his deportation.

On February 9, 2012, the District Court denied Cherys's motion for summary judgment, his motion to vacate under Rule 60, and his motion to convert the § 2255 motion to a petition for a writ of error coram nobis. With respect to the motion to convert, the District Court held that under *Kumarasamy v. Attorney General of the United States*, 453 F.3d 169, 172 (3d Cir. 2006), Cherys remained "in custody" for purposes of § 2255 because he was being held subject to deportation, and because his sentence included a

---

[1] The original motion was filed the day before.

5

five-year period of supervised release. The next day, the District Court denied Cherys's motion to stay his removal, and on March 19, 2012, dismissed the case as moot because Cherys had been deported to the Dominican Republic.

Cherys filed a notice of appeal on the same day, appealing the District Court's denial of his motion to convert and his Rule 60 motion, and its dismissal of his § 2255 motion as moot. He also filed a motion for reconsideration with the District Court. We granted Cherys's unopposed motion to stay his appeal pending resolution of the motion for reconsideration. The District Court held a hearing on the motion to reconsider on September 5, 2012, at which the Government conceded that Cherys's removal did not moot his § 2255 motion. Cherys's counsel agreed, but argued that if the motion *were* moot, it should be converted to a petition for a writ of error coram nobis. The District Court orally granted the motion for reconsideration as to the mootness question, but despite a lengthy colloquy with counsel as to whether the appropriate vehicle was habeas corpus or coram nobis, did not indicate at the hearing under which theory it was proceeding. It then orally denied relief on the merits, finding that Cherys had failed to show that Paiewonsky's performance fell below an objective standard of reasonableness.

Cherys moved in the District Court for a COA on September 17, 2012, and filed a second notice of appeal on October 8, 2012, based on the District Court's oral denial of relief. The District Court memorialized its findings and rulings in a February 20, 2013 memorandum and order, in which it clearly converted Cherys's § 2255 motion to a coram

nobis petition and found that Paiewonsky provide constitutionally effective assistance. The District Court did not address whether a reasonable likelihood existed that Cherys was incompetent at the time of trial. It also granted a COA on the following questions: (1) whether Cherys was denied constitutionally effective assistance of counsel; and (2) whether there was a reasonable probability that Cherys was tried while incompetent. On February 27, 2013, Cherys moved for this Court to expand the COA to encompass the District Court's decision to convert the § 2255 motion to a petition for writ of error coram nobis.

On May 8, 2013, we issued an order directing the parties to brief: (1) whether and to what extent a COA is required to proceed with this appeal; (2) to the extent a COA is required, whether the issue identified in Cherys's motion to expand already falls within the scope of the District Court's COA; and (3) whether the District Court's February 20, 2013 order is properly before us, in light of the fact that both of Cherys's notices of appeal were filed before that decision was entered. The parties were also free to address any other issues they deemed appropriate.

II

The District Court had jurisdiction pursuant to 48 U.S.C. § 1612(a). We have jurisdiction pursuant to 28 U.S.C. § 2253. "In a federal habeas corpus proceeding, we exercise plenary review of the district court's legal conclusions and apply a clearly

7

erroneous standard to the court's factual findings." *United States v. Lilly*, 536 F.3d 190, 195 (3d Cir. 2008) (quoting *Lambert v. Blackwell*, 134 F.3d 506, 512 (3d Cir. 1997)).

## III

Cherys asserts two discrete grounds for relief: (1) that he was denied the effective assistance of counsel, in violation of the Sixth Amendment; and (2) that he was tried and convicted while legally incompetent due to a mental disease or defect, in violation of the Due Process Clause of the Fifth Amendment. We find neither claim persuasive. But before reaching the merits, it is necessary first to untangle the procedural morass in which we find this case.

## A

When a District Court dismisses a motion to vacate under § 2255, it "must issue or deny a certificate of appealability." Rules Governing § 2255 Proceedings, Rule 11, 28 U.S.C. foll. § 2255. A defendant seeking to appeal a denial of a writ of error coram nobis, however, need not seek a COA. *United States v. Baptiste*, 223 F.3d 188, 189 n.1 (3d Cir. 2000) (per curiam). The parties agree that whether a COA is necessary in this case turns on whether the District Court erred in converting the § 2255 motion. We hold

that the District Court so erred, but that this error was harmless.[2]

A petition for a writ of error coram nobis provides a means to "collaterally attack a criminal conviction for a person . . . who is no longer 'in custody' and therefore cannot seek habeas relief under 28 U.S.C. § 2255." *Chaidez v. United States*, --- U.S. ---, ---, 133 S. Ct. 1103, 1106 n.1 (2013) (citing *United States v. Morgan*, 346 U.S. 502, 507, 510-11 (1954)). Coram nobis relief is "generally not available to those 'in custody.'" *United States v. Rhines*, 640 F.3d 69, 71-72 (3d Cir. 2011). As we recognized in *Kumarasamy*, "what matters for the 'in custody' requirement is whether the petitioner was in custody *at the time his habeas petition was filed*. As long as the petitioner was in custody when he filed his petition, a subsequent release from custody (e.g. a subsequent removal) will not divest the court of jurisdiction." 453 F.3d 169, 173 n.7 (3d Cir. 2006) (emphasis in original) (citation omitted) (citing *Lee v. Stickman*, 357 F.3d 338, 342 (3d Cir. 2004)).

We conclude that the District Court erred in converting Cherys's § 2255 motion to a petition for a writ of error coram nobis. Cherys was indisputably "in custody" within the meaning of § 2255 when he filed the motion, and therefore it should have, at all

---

[2] The District Court limited its COA to the merits of Cherys's Fifth and Sixth Amendment claims. Therefore, the propriety of the District Court's conversion of the § 2255 motion is not within the scope of the COA issued. But answering the antecedent question of whether a COA is required for this appeal necessarily requires us to answer the question Cherys seeks to add, *viz.*, whether the District Court erred in converting the motion. Accordingly, we will grant Cherys's motion to expand the COA so that we can address this question.

9

times, proceeded under § 2255.  With that said, the error was harmless because the

District Court granted a COA.  Accordingly, the District Court's order converting the

motion does not preclude us from reaching the merits.[3]

B

The District Court concluded that Cherys's trial counsel was not constitutionally

ineffective because she did not have reasonable cause to question his competency.  We

will affirm.

To succeed on his ineffective assistance of counsel claim, Cherys must make two

showings: first, that his trial counsel's performance fell below an objective standard of

reasonableness; and second, that he was prejudiced by counsel's deficiency.  *Thomas v.*

*Varner*, 428 F.3d 491, 499 (3d Cir. 2005) (quoting *Strickland v. Washington*, 466 U.S.

668, 687 (1984)).  With respect to the "deficient performance" prong of the analysis, he

must overcome a "strong presumption" that counsel's conduct was within the scope of

---

[3] We also directed the parties to address whether the District Court's February 20, 2013 order is properly before us in light of the fact that Cherys's notices of appeal were filed prior to that date.  "[A]bsent a showing of prejudice . . . , a premature notice of appeal, filed after disposition of some of the claims before a district court, but before entry of final judgment, will ripen upon the court's disposal of the remaining claims." *DL Res., Inc. v. FirstEnergy Solutions Corp.*, 506 F.3d 209, 215 (3d Cir. 2007) (quoting *Lazy Oil Co. v. Witco Corp.*, 166 F.3d 481, 585 (3d Cir. 1999)) (internal quotation marks omitted); *see also Cape May Greene, Inc. v. Warren*, 698 F.2d 179, 184-85 (3d Cir. 1983).  The Government does not claim that it will suffer prejudice from our consideration of the February 20 order.  Accordingly, we conclude that it is properly before us.

reasonable professional assistance. *Id*.

We have held that trial counsel should request a competency evaluation when she has "reason to doubt [her client's] competence to stand trial." *United States v. Haywood*, 155 F.3d 674, 680 (3d Cir. 1998). If at any point in a criminal proceeding prior to sentencing such reason arises, counsel for the defendant (or for the Government) may move for a hearing to determine the defendant's mental competency. 18 U.S.C. § 4241(a). The District Court "shall grant the motion, or shall order such a hearing on its own motion," if "reasonable cause" exists to believe that the defendant is "unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense" due to a mental disease or defect. *Id.* "Section 4241 'provides a mandatory process' that is 'intended to culminate in a record-based judicial determination of competence.'" *United States v. Graves*, 722 F.3d 544, 547 (3d Cir. 2013) (quoting *United States v. Haywood*, 155 F.3d 674, 680 (3d Cir. 1998)).

The District Court found that Paiewonsky did not have reason to doubt Cherys's competency. In attacking this finding, Cherys relies heavily on testimony establishing that Cherys's trial took place in a "small courtroom," in which Cherys had to sit behind counsel rather than next to her and could not speak directly with her. Because her back was to him, Paiewonsky "lacked the ability to observe Cherys on a continual basis," and allegedly did not have the opportunity to speak with him before each day of trial. Appellant's Br. at 28. But Cherys's contention is contradicted by Paiewonsky's

11

testimony: she met with him "several times" prior to trial, JA at 127, including immediately before trial began, at which time Paiewonsky observed nothing abnormal or different about him, JA at 128-29. She met with him "every day in the courtroom" during the course of the trial, never observing anything unusual about his behavior. JA at 129. She did not know he was on antipsychotic medication. And, although she stated that seating arrangements in the courtroom prevented her from having much interaction with Cherys during trial, she would "[o]ccasionally . . . look over in his direction" and observed nothing out of the ordinary. JA at 130-31. At no time had Paiewonsky been informed, either before or during trial, of Cherys's psychotic episode in prison. Although Cherys claims that he continued to suffer hallucinations throughout trial, he has offered no evidence that the hallucinations caused him to act in such a way as to give Paiewonsky reasonable cause to believe he was incompetent to stand trial.[4]

---

[4] In Cherys's view, his pro se filings should have given Paiewonsky reason to doubt his competency, and even if she did not have actual knowledge of the filings, we should deem her constructively aware of all documents that make up the trial record. The District Court acknowledged this peculiarity, stating at the evidentiary hearing that:

> It [was] only after the adverse verdict that the defendant communicated with the Court at some point. And I think that the petitioner's counsel raises a good point, that it's in the record, and one would presume that counsel should be aware of it. I think even the government concedes that counsel should be aware of it. But that alone is not dispositive. It raises a question, but it's not dispositive of the issue.

12

Failure to meet either prong of the *Strickland* analysis is fatal to a claim of ineffective assistance of counsel. *See, e.g., Marshall v. Hendricks*, 307 F.3d 36, 108 (3d Cir. 2002). We conclude that the District Court did not err in finding that Paiewonsky's trial performance was constitutionally effective. Accordingly, we will affirm.

C

In addition to his Sixth Amendment ineffective assistance of counsel claim, Cherys argues that he was tried and convicted while incompetent to stand trial due to a mental disease or defect, in violation of the Due Process Clause of the Fifth Amendment. This presents a separate ground for relief, but the District Court did not address whether Cherys was incompetent at the time of trial.[5]

Conviction of a legally incompetent person violates the Due Process Clause. *Pate v. Robinson*, 383 U.S. 375, 378 (1966). We have held that to be competent to stand trial, a defendant must "(1) have 'sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding;' and (2) possess 'a rational as well as factual

---

JA at 217 (paragraph break omitted). Even if we were to impute to Paiewonsky constructive knowledge of these filings, they alone would not give reasonable cause because, as the District Court concluded, Cherys's claims of incompetence were arguably suspect given that he contacted the District Court only after receiving an adverse verdict. JA at 218.

[5] Although Cherys suggests that we could remand with instructions to consider this question in the first instance, he does not claim that the factual record requires further development. Indeed, he asserts – and we agree – that the record as it stands is sufficient to determine whether he is entitled to relief.

understanding of the proceedings against him.'" *Hull v. Kyler*, 190 F.3d 88, 105 (3d Cir. 1999) (quoting *Dusky v. United States*, 362 U.S. 402, 402 (1960) (per curiam)); *see also United States v. Leggett*, 162 F.3d 237, 242 (3d Cir. 1998). "No predetermined formula" exists to guide a court in evaluating a defendant's competency, but relevant factors include evidence of irrational behavior by the defendant, his demeanor at trial, and whether a medical professional has evaluated his competence to stand trial. *Id.* Where, as here, the question of competency was raised before the trial court but no facts were found nor hearing held, the Government bears the burden on habeas review to show that reasonable cause to question the defendant's competence did not exist. *United States v. Hollis*, 569 F.2d 199, 206 (3d Cir. 1977).

The Government has carried its burden. Cherys's trial counsel testified that she observed nothing unusual about him in their interactions before and during trial. She testified that they conversed in Spanish throughout the trial, that he had no problem comprehending the proceedings, and that he spoke softly and was not anxious or aggressive. The District Court found her testimony credible. Presumably, if throughout the trial Cherys had been unable to stay awake or continued to suffer hallucinations commensurate with those that justified placing him in the SHU, this would have been noticed by Paiewonsky, by counsel for the Government, or indeed by the Court itself – all of whom had the authority to request a competency evaluation. *See* 18 U.S.C. § 4241(a).

To be legally incompetent, Cherys's mental illness must have rendered him unable

14

to consult with his attorney or understand the proceedings at the time of trial. *Leggett*, 162 F.3d at 237.  We recognize that determining post hoc whether a defendant was competent at the time of trial is a challenging endeavor.  *See Appel v. Horn*, 250 F.3d 203, 217 (3d Cir. 2001) (quoting *Pate*, 383 U.S. at 387).  That is doubly true here because Cherys's trial occurred fifteen years ago.  Nonetheless, the Government's evidence indicates that Cherys was able to meaningfully participate in the proceedings and to assist in his defense.  Accordingly, we hold that reasonable cause to question Cherys's competence did not exist at the time of trial.

IV

For the reasons set forth above, we will affirm the District Court's dismissal of Cherys's motion to vacate under 28 U.S.C. § 2255.

15