**UNITED STATES, Respondent,**

v.

**Master Sergeant Ishaq M.A. SALAHUDDIN, USAF, Petitioner.**

**Misc. Dkt. No. 2001–01.**

U.S. Air Force Court of Criminal Appeals.

2 March 2001.

Before YOUNG, STARR, and HEAD, Appellate Military Judges.

## OPINION OF THE COURT

YOUNG, Chief Judge:

On 27 February 2001, Master Sergeant Salahuddin petitioned this Court (1) for a writ of mandamus ordering the convening authority to provide a hearing before a military judge, with proper due process provisions, to determine whether the petitioner is incompetent to assist counsel in his own defense, and (2) to quash the convening authority's order to commit him to the custody of the Attorney General pursuant to Rule for Courts–Martial (R.C.M.) 909(c). The petitioner also applied for an order staying the convening authority's commitment order. On 1 March 2001, after conducting a hearing with counsel for the parties, we denied the petition to stay the commitment order be-

cause the petitioner failed to demonstrate any likelihood of success on the merits.

## I. Facts

On 12 December 2000, three specifications alleging misconduct in violation of Article 134, UCMJ, 10 U.S.C. § 934, were preferred against the petitioner. On 5 January 2001, the petitioner's defense counsel asked the special court-martial convening authority to order an inquiry into the competence of the petitioner to stand trial and cooperate in his own defense. R.C.M. 706. The convening authority apparently granted that request on 11 January 2001, and a sanity board was conducted. By letter dated 3 February 2001, the sanity board reported its findings: The petitioner is suffering from a mental disease or defect rendering him unable to understand the nature of the proceedings against him or to conduct or cooperate intelligently in his defense. The board found the cause of this incompetency to be neuropsychological deficits remaining from his moderately severe closed head injury on 8 October 2000. Based on the "substantial progress of his recovery to date," the board estimated that the petitioner might recover enough within the next 3 months to meet competency requirements.

On 21 February 2001, the general court-martial convening authority concurred with the sanity board's conclusion that the petitioner was not competent to stand trial. Despite the protestations of the petitioner's counsel, the general court-martial convening authority ordered the petitioner committed to the custody of the Attorney General, pursuant to R.C.M. 909(c), for transfer to the Federal Bureau of Prisons for commitment and treatment.

## II. Jurisdiction

The petitioner alleges that this Court has jurisdiction under the All Writs Act, 28 U.S.C. § 1651(a), to issue the stay and grant the petition for extraordinary relief. He argues that we have jurisdiction

> over issues concerning protections of legal rights that arise from 'military problems,' that arise from the Uniform Code of Military Justice. *Ponder v. Stone*, 54 M.J. 613, 615 (N.M.Ct.Crim.App.2000) (finding jurisdiction to entertain petition for ex-

traordinary relief in the nature of a writ of mandamus and a stay of proceedings arising from military judge's pretrial orders in case involving refusal to submit to anthrax inoculation).

On the other hand, the respondent contends this Court lacks jurisdiction under the All Writs Act to enter the relief requested. The respondent relies upon the Supreme Court's opinion in *Clinton v. Goldsmith*, 526 U.S. 529, 119 S.Ct. 1538, 143 L.Ed.2d 720 (1999). The respondent asserts that *Goldsmith* rejected such a broad reading. The respondent claims our jurisdiction under the All Writs Act is limited to matters in aid of our statutory jurisdiction under Article 66(c), 10 U.S.C. § 866(c)—to findings and sentences of courts-martial.

We find it unnecessary to enter the fray and draw a line between the two extremes posited by counsel. Even if we have jurisdiction, the petitioner is not entitled to relief.

### III. The Application for Stay and the Petition

R.C.M. 909(c), the provision upon which the convening authority relied to order the petitioner's commitment is based on Article 76b, UCMJ, 10 U.S.C. § 876b. That statute provides in part:

> In the case of a person determined under this chapter to be presently suffering from a mental disease or defect rendering the person mentally incompetent to the extent that the person is unable to understand the nature of the proceedings against that person or to conduct or cooperate intelligently in the defense of the case, the general court-martial convening authority for that person *shall* commit the person to the custody of the Attorney General.

Article 76b(a)(1), UCMJ (emphasis added).

The President provided procedural guidance for implementing Article 76b, UCMJ, in R.C.M. 909.

> (c) *Determination before referral.* If an inquiry pursuant to R.C.M. 706 conducted before referral concludes that an accused is suffering from a mental disease or defect that renders him or her mentally incompetent to stand trial, the convening

authority before whom the charges are pending for disposition may disagree with the conclusion and take any action authorized under R.C.M. 401, including referral of the charges to trial. If that convening authority concurs with the conclusion, he or she shall forward the charges to the general court-martial convening authority. If, upon receipt of the charges, the general court-martial convening authority similarly concurs, then he or she shall commit the accused to the custody of the Attorney General. If the general court-martial convening authority does not concur, that authority may take any action that he or she deems appropriate in accordance with R.C.M. 407, including referral of the charges to trial.

Article 76b, and the federal statute upon which it is based, both provide that if an accused is found to be mentally incompetent to stand trial, he "shall" be committed to the custody of the Attorney General. The petitioner does not contest the fact that he is mentally incompetent to stand trial. In fact, it was the petitioner who sought such a finding. Instead, he argues that before the government may involuntarily commit him, it must show, by more than a preponderance of the evidence, not only that he is mentally incompetent, but that he "requires hospitalization for his own welfare and protection of others." We, and every federal appellate court that has examined this issue, disagree. The purpose of any hearing, under Article 76b or the federal statute, 18 U.S.C. § 4241(d), is to determine the competency of an accused to stand trial, not to determine the propriety of commitment to the Attorney General. *United States v. Filippi*, 211 F.3d 649 (1st Cir.2000) (assuming commitment mandatory, 18 U.S.C. § 4241 is constitutional); *United States v. Haywood*, 155 F.3d 674 (3d Cir.1998); *United States v. Donofrio*, 896 F.2d 1301, 1302 (11th Cir.1990) (holding that upon finding of incompetency, "the district court did not have the authority to circumvent the hospitalization"); *United States v. Shawar*, 865 F.2d 856, 860 (7th Cir.1989) (finding 18 U.S.C. § 4241 and the legislative history unambiguous—once an accused "is found incompetent to stand trial, a district

judge has no discretion in whether or not to commit him"); *Farrell v. United States,* 646 A.2d 963 (D.C.App.1994) (interpreting DC statute based on 18 U.S.C. § 4241).

Accordingly, the petition for writ of mandamus is

DENIED.