# UNITED STATES NAVY–MARINE CORPS COURT OF CRIMINAL APPEALS

———————————

**No. 201500408**

———————————

## UNITED STATES OF AMERICA
Appellee

v.

## DAVID R. RENDON
Sergeant (E-5), U.S. Marine Corps
Appellant

———————————

Appeal from the United States Navy-Marine Corps Trial Judiciary

Military Judge: Major Michael D. Zimmerman, USMC.
For Appellant: Captain Daniel R. Douglass, USMC.
For Appellee: Lieutenant Commander Catheryne E. Pully, JAGC, USN; Lieutenant Jetti L. Gibson, JAGC, USN.

———————————

Decided 1 November 2016

———————————

Before CAMPBELL, RUGH, and HUTCHISON, *Appellate Military Judges*

———————————

**PUBLISHED OPINION OF THE COURT**

———————————

CAMPBELL, Senior Judge:

At a contested trial, officer and enlisted general court-martial members convicted the appellant of aggravated assault, assault consummated by a battery, and disorderly conduct—violations of Articles 128 and 134, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 928 and 934 (2012). The convening authority approved the adjudged sentence of 180 days' confinement, total forfeitures for six months, reduction to pay grade E-1, and a bad-conduct discharge.

Having been found incompetent to stand trial during the course of the trial proceedings, the appellant's initial assignment of error (AOE) contends his RULE FOR COURTS-MARTIAL (R.C.M.) 909, MANUAL FOR COURTS-MARTIAL, UNITED STATES (2012 ed.) procedural rights were violated when he underwent a second mental competency board instead of being delivered to the custody

of the United States Attorney General.[1] In a supplemental AOE, the appellant further argues the military judge erred in the findings instructions provided to the court-martial members.

We conclude the findings and sentence are correct in law and fact, and we find no error materially prejudicial to the appellant's substantial rights. Arts. 59(a) and 66(c), UCMJ.

## I. BACKGROUND

The appellant's trial proceedings before members began on 7 July 2015. After the conclusion of the government's case-in-chief, the appellant was in a single-motor-vehicle accident on the evening of 8 July 2015. He lost consciousness, injured his right hand and right shoulder, and was flown to a civilian hospital in La Jolla, California, for initial treatment.

When the appellant returned to court on 10 July 2015, the military judge ordered a mental competency examination pursuant to R.C.M. 706 to determine whether the accident was indicative of the appellant suffering from, or caused the appellant to suffer, a mental disease or defect rendering him unable to understand the nature of the proceedings against him or to conduct or cooperate intelligently in his defense. Later that day, the military judge conducted an R.C.M. 909(e) mental competency hearing. A psychiatrist, who conducted an evaluation and completed a truncated report[2] between the court-martial sessions, testified that the appellant "had a severe head injury; and now I noted significant memory problems; and what, in my opinion, was a definite increase in a level of irritability . . . ."[3] The expert witness concluded the appellant was unable to cooperate intelligently in his defense, and estimated it would take four to six weeks to restore the appellant's competence. The military judge then found, by a preponderance of the evidence, that the appellant was incompetent to stand trial, and he forwarded the findings to the convening authority, "so that the proper measures [could] be taken in accordance with R.C.M. 909(f)."[4]

The appellant then received inpatient care at the Naval Medical Center, San Diego, California. Upon his 16 July 2015 release, the military judge

---

[1] The initial AOE is raised pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982).

[2] The psychiatrist wrote, "Is the accused presently suffering from a mental disease or defect rendering the accused unable to understand the nature of the proceedings against the accused or to conduct or cooperate intelligently in his defense. Yes." Appellate Exhibit (AE) LXVI.

[3] Record at 704-05.

[4] AE LXVII.

ordered another R.C.M. 706 mental competency examination pursuant to a government request.[5] At the next court session, the military judge described the examination's purpose: "[T]o tell us whether or not the interim time from the accused's car accident and trial – or today had allowed him to be restored to competence, or whether or not we did, in fact, need to have him committed to the custody of the United States Attorney [General]."[6] Consequently, the appellant had a neuropsychological evaluation and an interview with another psychologist on 23 and 24 July 2015. The 24 July 2015 evaluation report indicated the appellant had "sufficient mental capacity to understand the nature of the proceedings against him and to conduct and cooperate intelligently in his defense."[7] At a 28 July 2015 hearing, over defense counsel's objections, the military judge found the accused competent.

Later in that same court-martial session, the appellant also discussed his desire to fire his three attorneys (a civilian counsel and two detailed military counsel) and represent himself for the remainder of the case. The following exchange was part of the lengthy colloquy with the military judge:

> MJ: It seems to me, though, that reading between the lines of what you are telling me, you don't want to – you are not going to do anything [to present a defense case]. You are confident there's not going to be any issues because you are not going to do anything; is that right?
>
> ACC: Yes, Your Honor.[8]

A detailed military defense counsel then requested that the military judge "reconsider the [R.C.M.] 909 decision" because "it's clear that [the appellant is] making decisions that no competent or rational person would make."[9] After a recess, the military judge had the Navy psychologist who conducted the 23-24 July R.C.M. 706 board testify telephonically about the results. The psychologist explained neuropsychological testing was done because of the appellant's potential head injury and loss of consciousness during the car accident, and that beyond interviewing the appellant, he also reviewed the previous R.C.M. 706 board and the appellant's electronic medical records. The military judge continued to find the appellant competent.

---

[5] AE LXX.

[6] Record at 718.

[7] AE LXVIII.

[8] Record at 750.

[9] *Id.*

Trial resumed before the court-martial members on 29 July 2015.[10] During *voir dire*, the military judge first advised the members about the standard of proof:

> Sergeant Rendon is presumed innocent and I will instruct you prior to your deliberations of the guilt or innocence of Sergeant Rendon. I will advise you that he must be presumed to be innocent until his guilt is established by legal and competent evidence beyond a reasonable doubt; that, in this case, if there is reasonable doubt to the guilt, the doubt shall be resolved in the accused's favor and he shall be acquitted. That the burden of proof to establish the guilt of the accused beyond a reasonable doubt is upon the government. I will also give you other instructions concerning the law with which you must follow. At this time, have any of you formed or expressed an opinion concerning the guilt or innocence of the accused?
>
> That's a negative response from the members.
>
> I do think because we have mentioned reasonable doubt a few times, this is an appropriate time for me to talk to you a little bit about what that means, so that you have a frame of reference when you're evaluating the evidence and what proof beyond reasonable doubt means.
>
> A reasonable doubt is not intended a fanciful, speculative, or ingenious doubt of conjecture; but an honest and actual doubt suggested by the material evidence or lack of it in the case. It is a genuine misgiving caused by insuffici ency of proof of guilt.
>
> Reasonable doubt is a fair and rational doubt based upon reason and common sense, and arising from the state of the evidence. Proof beyond a reasonable doubt is proof that leaves you firmly convinced of the accused's guilt.
>
> There are very few things in this world that we know with absolute certainty. And in criminal cases, the law does not require proof that overcomes every possible doubt.

---

[10] The appellant's military and civilian defense counsel represented him throughout the trial. On 28 July 2015, the military judge determined there was no valid R.C.M. 506(d) waiver of the right to counsel, and the appellant's request reflected no irreconcilable conflict or breakdown in communication with his counsel, as required for approval of a mid-trial request to proceed *pro se*. Instead, the record revealed only frustrations and a difference of opinion on trial tactics and strategy between the appellant and his counsel. AE LXXIV at 14-16.

If, based on your considerations of the evidence, you are firmly convinced that the accused is guilty of the crimes charged, you must find him guilty. If, on the other hand, you think there is a real possibility he is not guilty, you should give him the benefit of the doubt and find him not guilty.

The rules for reasonable doubt extends to every element of the offense; although, each particular fact advanced by the prosecution that does not amount to an element need not be established beyond a reasonable doubt. However, if on the whole of the evidence you are satisfied beyond a reasonable doubt of the truth of each and every element of an offense, then you should find the accused guilty of that offense.

Do all members understand this definition of beyond a reasonable doubt and how it applies to this case?

That's a positive response from the members.

Although the government is required to prove every element beyond a reasonable doubt, does any member expect the government to prove its case beyond all doubt?

That's a negative response from the members.

At the end of the trial, the evidence shows two reasonable theories as to what happened. One pointing to the guilt, the other pointing to the innocence of the accused. Do you all understand that in that circumstance, you are obligated to find the accused not guilty?

Positive response from the members.[11]

Following the parties' closing arguments on findings, the military judge again instructed the members about the standard of proof and their roles and responsibilities during their deliberations:

You are further advised, first, the accused is presumed to be innocent until his guilt is established by legal and competent evidence beyond a reasonable doubt. Second, if there is reasonable doubt as to the guilt of the accused, that doubt must be resolved in favor of the accused and he must be acquitted. Third, if there's reasonable doubt as to the degree of guilt, that doubt must be resolved in favor of the lower degree of guilt as to which there is no reasonable doubt. And lastly, the burden of proof to establish the guilt of the accused beyond a reasonable

---

[11] Record at 302-03.

doubt is on the government. The burden never shifts to the accused to establish innocence or disprove the facts necessary to establish each element of each offense.

There is one caveat to that that I'm going to discuss with you here in just a moment. But that is only with regard to the defense of lack of mental responsibility. But as to the elements of each offense, there is no caveat. That burden's on the government, the government alone. It never shifts to the accused.

Some of you may have served as jurors in a civil case or as board members in an administrative board where you were told that it is only necessary to prove that a fact is more likely true than not true. In criminal cases, the government's proof must be more powerful than that. It must be beyond a reasonable doubt. Reasonable doubt is not a fanciful, ingenious doubt or conjecture, but an honest, conscientious doubt suggested by the material evidence or lack of it in the case. It is an honest misgiving caused by the insufficiency of proof of guilt. Reasonable doubt is a fair and rational doubt based upon reason and common sense and arising from the state of the evidence.

Proof beyond a reasonable doubt means proof to an evidentiary certainty, although not necessarily to an absolute or mathematical certainty.

Proof beyond a reasonable doubt is proof that leaves you firmly convinced of the accused's guilt. There are very few things in this world that we know with an absolute certainty; and criminal cases in the law does [sic] not require proof that overcomes every possible doubt. The proof must be such as to exclude not every hypothesis or possibility of innocence, but every fair and rational hypothesis except that of guilt.

If based on your consideration of the evidence, you're firmly convinced the accused is guilty of crimes charged, you must find him guilty. If on the other hand, you think there is a real possibility that he is not guilty, you must give him the benefit of the doubt and find him not guilty.

The rule as to reasonable doubt extends to every element of the offense, although each particular fact advanced by the prosecution that does not amount to an element need not be established beyond a reasonable doubt. However, if on the

whole evidence, you're satisfied beyond a reasonable doubt of the truth of each and every element, then you should find the accused guilty.

Bear in mind that only matters properly before the court as a whole should be considered. In weighing and evaluating the evidence, you're expected to use your own common sense, your knowledge of human nature and the ways of the world. In light of all of the circumstances in the case, you should consider the inherent probability or improbability of the evidence. Bear in mind that you may properly believe one witness and disbelieve several other witnesses whose testimony conflicts with one. The final determination as to the weight or significance of the evidence and the credibility of witnesses in this case rest solely upon you.

You must disregard any comment or statement or expression made by me during the course of the trial that might seem to indicate any opinion on my part as to whether the accused is guilty or not guilty since you alone have the responsibility to make that determination. Each of you must impartially decide whether the accused is guilty or not guilty according to the law I have given you, the evidence admitted in court, and your own conscious.[12]

## II. DISCUSSION

### A. Appellant's competency

In the appellant's view, by conducting another R.C.M. 706 board after the initial competency hearing, instead of transferring him to the U.S. Attorney General for further hospitalization, the court-martial convening authority failed to "follow the correct mental health process under R.C.M. 909[.]"[13] The appellant further argues this failure merits our setting aside the convictions:

By failing to take the exact steps of R.C.M. 909, the Government violated Sgt Rendon's rights to proper mental health care. As such, his actual competency to stand trial is placed into question. Because it is unclear if he was actually competent to stand trial at that time, his participation [in] the subsequent defense case in chief and sentencing must be

---

[12] *Id*. at 934-35.

[13] Appellant's Motion to File Supplemental Assignment of Error granted on 31 May 2016 at 4.

questioned. As such, the findings of guilt and the sentence are invalid.[14]

"No person may be brought to trial by court-martial if that person is presently suffering from a mental disease or defect rendering him or her mentally incompetent to the extent that he or she is unable to understand the nature of the proceedings . . . or to conduct or cooperate intelligently in the defense of the case." R.C.M. 909(a). A service member is presumed competent to stand trial unless the contrary is established by a preponderance of the evidence. R.C.M. 909(b) and (e)(2). We review the appellant's mental capacity as "an interlocutory question of fact," R.C.M. 909(e)(1), and overturn a military judge's finding on mental capacity to stand trial only if it is clearly erroneous, *United States v. Proctor*, 37 M.J. 330, 336 (C.M.A. 1993).

Under R.C.M. 706(a), an inquiry into an accused's mental capacity may be made if it appears he does not have the capacity to stand trial. "If an inquiry pursuant to R.C.M. 706 . . . concludes that an accused is suffering from a mental disease or defect that renders him or her mentally incompetent to stand trial, the military judge shall conduct a hearing to determine the mental capacity of the accused." R.C.M. 909(d). An accused whom the military judge finds incompetent to stand trial "shall be hospitalized by the Attorney General as provided in section 4241(d) of title 18, United States Code." R.C.M. 909(f).

Under the same statute, civilian courts have determined that commitment is mandatory even when medical evidence indicates that defendants' mental conditions are untreatable. *United States v. Shawar*, 865 F.2d 856, 860 (7th Cir. 1989) (notwithstanding the trial judge's belief that hospitalization, treatement and observation would not change the defendant's incompetence due to mental retardation, "the intent of Congress is clear. The statute plainly states that 'the court *shall* commit the defendant to the custody of the Attorney General [who] shall hospitalize the defendant for treatment . . . .' 18 U.S.C. § 4241(d). The plain meaning of this phrase is . . . that once a defendant is found incompetent to stand trial, a district judge has no discretion in whether or not to commit him") (emphasis and alteration in original); *United States v. Ferro,* 321 F.3d 756, 762 (8th Cir. 2003) ("[E]ven where the medical reports presented to the district court showed by a preponderance of the evidence that the condition [progressive dementia] was permanent, the statutory scheme [of 18 U.S.C. § 4241(d)] appropriately affords additional time during which the Attorney General may explore medical options.").

---

[14] *Id.* at 5.

We agree with the appellant's assertion that in courts-martial where a military judge finds an accused incompetent, commitment to the U.S. Attorney General's custody is mandatory. Furthermore, as with the perceived permanence of an incapacitating condition, the language of 18 U.S.C. § 4241(d), Article 76b, UCMJ, and R.C.M. 909 equally provides no exception based on whether an incapacitating condition is perceived to be ephemeral.[15] The military judge's determination that the appellant was incompetent triggered mandatory commitment to the custody of the U.S. Attorney General as of 10 July 2015, notwithstanding concerns about that commitment's duration.[16] Thus, efforts by the military judge to circumvent committing the appellate to the Attorney General's custody in favor of local treatment would violate the statute.

But the record reveals no such efforts,[17] and the 10 July 2015 competency determination was not final. The military judge could revisit the matter at his discretion. R.C.M. 706(c)(4) ("Additional examinations may be directed under this rule at any state of the proceedings as circumstances may require."); *United States v. Collins*, 60 M.J. 261, 266 (C.A.A.F. 2004) ("The question of whether an additional psychiatric examination is necessary rests within the discretion of the military judge and is reviewable only for abuse of discretion.") (citation and internal quotation marks omitted); *United States v. Cornejo-Sandoval*, 564 F.3d 1225, 1234 (10th Cir. 2009) ("[W]hether to order a second competency exam is a matter wholly within the sound discretion of the trial court.") (citations and internal quotation marks omitted); *United States v. Sherman*, 912 F.2d 907, 909 (7th Cir. 1990) (rejecting collateral

---

[15] *See United States v. Salahuddin*, 54 M.J. 918, 919-20 (A.F. Ct. Crim. App. 2001) (denying application for writ to quash convening authority's order for commitment to the custody of the Attorney General because "Article 76b[, UCMJ], and the federal statute upon which it is based, both provide that if an accused is found to be mentally incompetent to stand trial, he 'shall' be committed to the custody of the Attorney General" regardless of whether the accused "requires hospitalization for his own welfare and protection of others," even when the R.C.M. 706 board "estimated that the petitioner might recover enough within the next 3 months to meet competency requirements").

[16] At the second competency hearing, during discussions with counsel about information that the Federal Bureau of Prisons might hold those committed for incompetence for a full 120 days due to an administrative policy "[t]hat had nothing to do necessarily with the [time required for] treatment," the military judge stated, "I have some concerns about whether or not Sergeant Rendon should spend 120 days in the Federal Bureau of Prisions mental facility if he didn't need to, if it was just a concussion that maybe had subsided in the interim." Record at 724.

[17] The military judge's findings of fact demonstrate on-going efforts during the period between the first and second competency hearings to effect the appellant's transfer of custody to the U.S. Attorney General. AE LXXIV at 3-6.

estoppel challenge to second competency hearing because "the issue of [the defendant's] competency can hardly be considered final when the very objective of competency determinations is to discover whether or when a defendant will be competent to stand trial."). Particularly in light of the 10 July 2015 R.C.M. 706 evaluation's indication that the appellant might quickly regain competency, the military judge did not abuse his discretion in ordering another examination while the appellant's transfer to the custody of the Attorney General remained pending.

Despite the appellant's contentions, he suffered no legal prejudice from the military judge's revisiting the competency determination.[18] The military judge received the results of another R.C.M. 706 board before the appellant was ever committed to the Attorney General's custody. He considered this information and conducted another competency hearing based upon it. The determination that the appellant was competent at that latter competency hearing obviated the need for further hospitalization and removed the mandatory commitment predicate.

We next turn to whether the appellant met his burden to overcome the presumption that he was, in fact, competent to stand trial under R.C.M. 909(b) and (e). A military judge may certainly consider the results of an R.C.M. 706 board during an R.C.M. 909 competency hearing—indeed, a board's finding that mental disease or defect adversely impacts mental ability to stand trial *requires* that the military judge conduct a hearing and determine whether an accused is competent. The R.C.M. 706 board that the military judge considered during the 28 July 2015 mental competency hearing was conducted on 23 and 24 July 2015, and it involved a neuropsychological evaluation and interview of the appellant by two highly trained mental health professionals. The military judge found the appellant "competent to stand trial based . . . [l]argely [on] Appellate Exhibit LXVIII [the 24 July 2015 evaluation report], there being very little evidence presented, if any, to the contrary."[19] Having considered the entire record of trial and the appellant's brief—which does not allege that the appellant is incapable of participating in this court-martial phase and assisting his

---

[18] *See United States v. Erb*, 31 C.M.R. 110, 114-16 (C.M.A. 1961) (upholding a medical board's decision that the appellant could distinguish right from wrong at the time of the offense, contrary to an earlier board's decision, because "[m]edical board proceedings, of course, are not judicial in nature, purpose, or effect; they are entirely administrative," and "action of an undiluted administrative character, can, in itself, contain no latent double jeopardy problems.") (citation and internal quotation marks omitted) .

[19] Record at 728.

appellate defense counsel—we conclude the military judge's finding is not clearly erroneous.

## B. Findings instruction

In his supplemental AOE, the appellant avers the military judge committed reversible error in his instruction about the standard of proof required for a conviction. We disagree.

Whether a court-martial panel was properly instructed is a question of law which we review *de novo. United States v. Medina*, 69 M.J. 462, 465 (C.A.A.F. 2011) (quoting *United States v. Ober*, 66 M.J. 393, 405 (C.A.A.F. 2008)). When counsel does not object to an instruction at trial, as in this case, we review for plain error—which occurs when (1) there is error, (2) the error is plain or obvious, and (3) the error results in material prejudice to a substantial right. *United States v. Tunstall*, 72 M.J. 191, 196 (C.A.A.F. 2013).

The specific instructional language now challenged—"[i]f, based on your consideration of the evidence, you are firmly convinced that the accused is guilty of the crime charged, you *must* find him guilty"[20]—is part of the Navy and Marine Corps' electronic benchbook's reasonable doubt instruction.[21] It also comes directly from Instruction 21 in the Federal Judicial Center's *Pattern Criminal Jury Instructions*, FEDERAL JUDICIAL CENTER, 28 (1987), http://federalevidence.com/pdf/JuryInst/FJC_Crim_1987.pdf,[22] which has

---

[20] Appellant's Motion to File Supplemental Assignment of Error granted on 12 Sep 2016 at 3 (citing Record at 935) (emphasis in original).

[21] The 2016 Electronic Benchbook – NMC (v16.2), https://www.jagcnet.army.mil/Sites/trialjudiciary.nsf/homeContent.xsp?open&documentId=900756AC675854ED8525804400729CBB (last accessed 27 Oct 2016). With only minor variances, the members also received the complete Closing Substantive Instructions on Findings from the Military Judges' Benchbook, Dept. of the Army Pamphlet 27-9 at 1164-65 (Chapter 8, §III, ¶ 8-3-11) (10 Sep 2014). The substantive difference between the U.S. Army publication's relatively truncated instruction and the one here is due to the full incorporation the Federal Judicial Center's model instruction at this trial.

[22] "Definition of Reasonable Doubt. As I have said many times, the government has the burden of proving the defendant guilty beyond a reasonable doubt. Some of you may have served as jurors in civil cases, where you were told that it is only necessary to prove that a fact is more likely true than not true. In criminal cases, the government's proof must be more powerful than that. It must be beyond a reasonable doubt.

Proof beyond a reasonable doubt is proof that leaves you firmly convinced of the defendant's guilt. There are very few things in this world that we know with absolute certainty, and in criminal cases the law does not require proof that overcomes every possible doubt. If, based on your consideration of the evidence, you are firmly convinced that the defendant is guilty of the crime charged, you must find him guilty.

been endorsed as a proper explanation of reasonable doubt for juries by a concurring Supreme Court opinion,[23] by our superior court,[24] by this court,[25] and by the Air Force Court of Criminal Appeals.[26]

Specifically regarding the "must find him guilty" portion of the Federal Judicial Center's instruction, the Air Force Court of Criminal Appeals[27] and numerous Federal Circuit and state appellate courts[28] have expressly held that jurors may be instructed that they "must find" a defendant guilty if they are convinced of the guilt beyond a reasonable doubt. Indeed, the Eighth and

---

If on the other hand, you think there is a real possibility that he is not guilty, you must give him the benefit of the doubt and find him not guilty."

[23] *Victor v. Nebraska*, 511 U.S. 1, 27 (1994) (Ginsburg, J., concurring in part and concurring in the judgment) ("This instruction plainly informs the jurors that the prosecution must prove its case by more than a mere preponderance of the evidence, yet not necessarily to an absolute certainty. The 'firmly convinced' standard for conviction, repeated for emphasis, is further enhanced by the juxtaposed prescription that the jury must acquit if there is a 'real possibility' that the defendant is innocent. This model instruction surpasses others I have seen in stating the reasonable doubt standard succinctly and comprehensibly.").

[24] *United States v. Meeks*, 41 M.J. 150, 157 n.2 (C.M.A. 1994) ("[T]he Armed Forces should reexamine their reasonable-doubt instruction. One possibility is the one recommended by the Federal Judicial Center . . . .").

[25] *United States v. Jones*, 46 M.J. 815, 817-18 (N-M. Ct. Crim. App. 1997) (rejecting argument that "the military judge improperly shifted the burden to the appellant" by "using the phrase 'real possibility'" in the reasonable doubt instruction drafted by the Federal Judicial Center).

[26] *United States v. McClour,* No. ACM 38704, 2016 CCA LEXIS 82 *(*A.F. Ct. Crim. App. 11 Feb 2016), *rev. granted*, 75 M.J. 376 (C.A.A.F. 2016) ("The language used by the military judge in Appellant's case is . . . an accepted reasonable doubt instruction used in Air Force courts-martial" and "[i]t was also offered by our superior court as a suggested instruction.") (citing *United States v. Sanchez*, 50 M.J. 506, 511 (A.F. Ct. Crim. App. 1999); *Meeks*, 41 M.J. at 157 n.2)).

[27] *Sanchez*, 50 M.J. at 509-10 (upholding instructions that "[i]f the Government meets their burden, you have a duty to return a conviction, whether you like it or not-whether you like the law or not," and if "you are firmly convinced that the accused is guilty of the offense charged, you must find him guilty," because the military judge "did no more than advise the members of their sworn duty.").

[28] *See, e.g., United States v. Stegmeier*, 701 F.3d 574, 583 (8th Cir. 2012); *United States v. Mejia*, 597 F.3d 1329, 1340 (D.C. Cir. 2010); *United States v. Carr*, 424 F.3d 213 (2nd Cir. 2005); *Farina v. United States*, 622 A.2d 50 (D.C. 1993); *People v. Goetz*, 532 N.E.2d 1273 (N.Y. 1988); *State v. Ragland*, 519 A.2d 1361 (N.J. 1986); *People v. Stewart*, No. 230899, 2002 Mich. App. LEXIS 751 (Mich. Ct. App. May 28, 2002); *State v. Santiago*, 552 A.2d 438 (Conn. App. Ct. 1989).

Tenth Circuit Courts of Appeals' own model criminal jury instructions have the same language that the military judge used in this case.[29]

Despite this well-settled law, the appellant contends the reasonable doubt instruction here was the equivalent of a directed guilty verdict, in violation of *United States v. Martin Linen Supply Co.*, 430 U.S. 564 (1977). In dicta, *Martin Linen Supply Co.* states that "a trial judge is prohibited from entering a judgement of conviction or directing the jury to come forward with such a verdict . . . regardless of how overwhelmingly the evidence may point in that direction." *Id.* at 572-73 (citations omitted).[30] However, cases in which that prohibition has truly been at issue are clearly distinguishable from this case and in no way suggest that the military judge directed a conviction, or otherwise erred, in providing the reasonable doubt instruction at issue here.

For example, a jury instruction stating that if the government disproved the defendant's alibi defense beyond a reasonable doubt, then the jury must find the defendant guilty, violates the defendant's Sixth Amendment right "to have that jury decide all relevant issues of fact and to weigh the credibility of witnesses." *United States v. Hayward*, 420 F2d 142, 143-44 (D.C. Cir. 1969). However, that instruction is a directed verdict not due to the "must find" language, but because the instruction as a whole "eliminated all considerations relevant to the jury's determination of guilt except whether the defendant was present at the scene of the crime at the time it occurred." *United States v. Pierre*, 974 F.2d 1355, 1357 (D.C. Cir. 1992) (citation omitted).

Thus, the D.C. Circuit Court of Appeals held that an instruction very similar to the one at issue here, "[i]f you find that the government has proven beyond a reasonable doubt every element of the offense with which the

---

[29] Instruction 3.09, *Manual of Model Criminal Jury Instructions for the District Courts of the Eighth Circuit*, 84 (5 Aug. 2014), http://www.juryinstructions.ca8.uscourts.gov/Manual_of_Model_Criminal_Jury_Instructions_New_and_Revised_8_5_2014.pdf ("If all of [these] [the] elements have been proved beyond a reasonable doubt as to [the defendant] . . . then you *must find* [the defendant] . . . guilty of the crime charged . . . otherwise you must find [the defendant] . . . not guilty of this crime [under Count __].") (emphasis added); Instruction 1.05, *Tenth Circuit Court of Appeals Criminal Pattern Jury Instructions*, 9 (10 Sept. 2015), https://www.ca10.uscourts.gov/sites/default/files/clerk/JuryInstructionsUpdate2015_0.pdf ("If, based on your consideration of the evidence, you are firmly convinced that the defendant is guilty of the crime charged, you *must find* him guilty. If on the other hand, you think there is a real possibility that he is not guilty, you must give him the benefit of the doubt and find him not guilty.") (emphasis added).

[30] The holding in *Martin Linen Supply Co.* resolved the question of whether the government could appeal a directed verdict of not guilty, without ever addressing the propriety of reasonable doubt instructions. 430 U.S. at 575.

defendant is charged, and which I will define for you, it is your duty to find him guilty[,]" was not a directed verdict. *Id.* at 1356-57.[31]

The reasonable doubt instruction that the military judge used for the appellant's fact-finders did not eliminate any elements from their consideration, assess witness credibility for them, or determine the ultimate issue of guilt in usurpation of their role. Instead, the instruction's requirements for conviction were contingent upon the members' being firmly convinced of the appellant's guilt beyond a reasonable doubt based upon their own individual consideration of all the evidence—as the overall instructions given by the military judge make clear.[32] The various times the members were also instructed that they must acquit the appellant were similarly dependent on their own evaluation of the evidence. Consequently, we hold the military judge did not err in instructing the court-martial members as he did regarding reasonable doubt.

### III. CONCLUSION

The findings and sentence are affirmed.

Judge RUGH and Judge HUTCHISON concur.

For the Court



R.H. TROIDL
Clerk of Court

---

[31] *See also Farina*, 622 A.2d at 61; *People v. Waller*, 2016 Colo. App. LEXIS 1173 at *28, *38-39 (Colo. Ct. App. Aug. 11, 2016); and *Santiago*, 552 A.2d at 441.

[32] *See United States v. Hardy*, 46 M.J. 67, 75 (C.A.A.F. 1997) ("[C]omments of the military judge should be considered in the context of the . . . full body of the instructions given . . . .").

14