# UNITED STATES NAVY–MARINE CORPS
# COURT OF CRIMINAL APPEALS

―――――――――――

### No. 201500024

―――――――――――

### UNITED STATES OF AMERICA
Appellee

v.

### MARK A. BERGER
Hospital Corpsman Third Class (E-4), U.S. Navy
Appellant

―――――――――――

Appeal from the United States Navy-Marine Corps Trial Judiciary

Military Judge: Commander Robert P. Monahan, JAGC, USN.
Convening Authority: Commandant, Naval District Washington,
Washington Navy Yard, Washington, DC.
Staff Judge Advocate's Recommendation: Lieutenant Commander
Justin D. Pilling, JAGC, USN.
For Appellant: Mr. David P. Sheldon, Esq.; Lieutenant R. Andrew
Austria, JAGC, USN.
For Appellee: Major Kelli A. O'Neil, USMC; Major Cory A. Carver,
USMC.

―――――――――――

Decided 3 May 2018

―――――――――――

Before GLASER-ALLEN, FULTON, and SAYEGH, *Appellate Military Judges*

―――――――――――

**This opinion does not serve as binding precedent but may be cited as
persuasive authority under NMCCA Rule of Practice and Procedure
18.2.**

―――――――――――

SAYEGH, Judge:

At a general court-martial a military judge convicted the appellant,
pursuant to his plea, of violating a lawful general order by wrongfully
possessing a synthetic cannabinoid, in violation of Article 92, Uniform Code
of Military Justice (UCMJ), 10 U.S.C. § 892. At the same court-martial a

panel of members with enlisted representation convicted the appellant, contrary to his pleas, of two specifications of rape, one specification of aggravated sexual contact, two specifications of abusive sexual contact, one specification of assault consummated by a battery, and one specification of sexual assault in violation of Articles 120 and 128, UCMJ, 10 U.S.C. §§ 920 and 928.[1] In May 2016, we affirmed the findings and sentence. *United States v. Berger*, No. 201500024, 2016 CCA LEXIS 322, unpublished op. (N-M. Ct. Crim. App. 26 May 2016). The Court of Appeals for the Armed Forces (CAAF) set aside our decision and remanded the case for reconsideration in light of *United States v. Hills*, 75 M.J. 350 (C.A.A.F. 2016). *United States v. Berger*, 76 M.J. 128 (C.A.A.F. 2017).[2]

In his first assignment of error (AOE), the appellant contends the military judge erred by granting the government's motion to use evidence of charged sexual misconduct under MILITARY RULE OF EVIDENCE (MIL. R. EVID.) 413, MANUAL FOR COURTS-MARTIAL, UNITED STATES (2016 ed.), to show propensity to commit other charged sexual misconduct. The appellant also raises a supplemental AOE alleging that the military judge erred by instructing the members the appellant must be found guilty if the members are firmly convinced of the crime charged.[3] We specified a third issue:[4]

> WHETHER THE EVIDENCE IN THIS CASE RENDERS THE
> MILITARY JUDGE'S INSTRUCTION ON THE PROPER USE
> OF PROPENSITY EVIDENCE UNDER MILITARY RULE OF
> EVIDENCE 413, HARMLESS BEYOND A REASONABLE
> DOUBT, IN LIGHT OF *UNITED STATES V. HILLS*, 75 M.J.

---

[1] Prior to sentencing the military judge merged the following specifications in Additional Charge II: Specification 8 (sexual assault) with Specification 7 (rape); and Specification 10 (abusive sexual contact) with Specification 9 (aggravated sexual contact.) Record at 1788.

[2] The CAAF granted review of (1) whether the military judge abused his discretion by allowing the government to use evidence of charged sexual misconduct to show the appellant's propensity to commit other charged sexual misconduct, and (2) whether the military judge erred by instructing members that they must convict the appellant if they are firmly convinced the accused is guilty. 75 M.J. 479 (C.A.A.F. 2016).

[3] In accordance with *United States v. McClour*, 76 M.J. 23 (C.A.A.F. 2017), we summarily reject the appellant's supplemental AOE alleging that the military judge erred by instructing the members that "if, based on your consideration of the evidence, you are firmly convinced that the accused is guilty of the crime charged, you must find him guilty." *United States v. Clifton*, 35 M.J. 79 (C.M.A. 1992); *see also United States v. Rendon*, 75 M.J. 908, 916-17 (N-M. Ct. Crim. App. 2016), *rev. denied*, 76 M.J. 128 (C.A.A.F. 2017).

[4] We heard oral argument on this AOE on 15 March 2018.

350 (C.A.A.F. 2016), AND ITS PROGENY, *UNITED STATES V. GUARDADO*, 77 M.J. 90 (C.A.A.F. 2017), AND *UNITED STATES V. LUNA*, 76 M.J. 477 (C.A.A.F. 2017).

After careful reconsideration of the record of trial, the parties' pleadings, and argument, we find the military judge's instructions to the members were confusing and created error materially prejudicial to the rights of the appellant. In our decretal paragraph we set aside certain findings and the sentence, and authorize a rehearing. Arts. 59(a) and 66(c), UCMJ.

## I. BACKGROUND

While the appellant was stationed in Okinawa, Japan, he met Ms. NKB, a Japanese national. They married in August 2010. Ms. NKB had a young son. The three of them lived together in Okinawa until November 2011 when the appellant executed orders to Marine Corps Base Quantico, Virginia. According to Ms. NKB, throughout their marriage the appellant engaged in an ongoing course of physical and sexual violence against her, as well as other controlling behavior. The charges to which the appellant pleaded not guilty, including one specification of assault consummated by a battery under Article 128, UCMJ, and ten specifications of sexual assault under Article 120, UCMJ, covered the time period from October 2010 to November 2012.

Ms. NKB's account of her marriage formed the basis of the government's theory of the case. The government sought to prove that over the course of the charged two-year period, the appellant used sexual, physical, and psychological abuse to dominate and control his wife. In furtherance of this theory, the government moved to admit significant evidence of uncharged sexual, physical, and psychological abuse under MIL. R. EVID. 404(b). This uncharged conduct was set forth in a six-page offer of proof attached to the government's motion. In a separate motion, the government also moved to present this same evidence of uncharged sexual abuse under MIL. R. EVID. 413 as propensity evidence. Neither motion asked the court to instruct the members that they could consider evidence of one charged sexual offense when considering the other charged sexual offenses.

The military judge issued a single ruling on the motions, granting them both in part.[5] The military judge's ruling analyzed the uncharged physical and psychological abuse under MIL. R. EVID. 404(b) and the uncharged sexual abuse under MIL. R. EVID. 413. He found that evidence of uncharged sexual assaults was relevant to establish the appellant's motive (hostility to Ms. NKB); his intent (to dominate and control Ms. NKB); the existence of a common scheme or plan (also to dominate and control Ms. NKB); and that these acts tended to rebut any claim that the appellant had a mistake of fact

---

[5] Appellate Exhibit (AE) LIX at 23.

as to whether Ms. NKB consented to the charged sexual conduct.[6] He further found the evidence of the charged sexual offenses which occurred earlier in time established the appellant's motive (hostility to Ms. NKB) and his intent (to dominate and control Ms. NKB) to commit the charged sexual offenses that occurred later in time, and this evidence of earlier charged sexual offenses tended to refute any claim that the appellant had a mistake of fact as to whether Ms. NKB consented to the charged sexual conduct.

At trial, Ms. NKB testified that the appellant pysically and sexually assaulted her and engaged in other controlling behavior throughout their marriage. Her testimony included four instances of uncharged sexual abuse permitted by the military judge under MIL. R. EVID. 413:[7] (1) between October and December 2011, the appellant forced her to engage in sexual intercourse when she came home from work during lunch breaks;[8] (2) in November or December 2011, the appellant "grabbed [the] left side of [her] breast" and "touched [her] private part" while driving between Pennsylvania and Quantico;[9] (3) in the October or November 2012 timeframe, the appellant woke her in the bedroom of their home in Virginia, and unsuccessfully attempted to engage in anal sex over her objection;[10] and (4) in November 2012, after she refused his request to have intercourse, the appellant grabbed her breasts and groin while masturbating in the basement of their Virginia home.[11] In addition to this uncharged sexual misconduct, Ms. NKB's testimony included 12 uncharged acts of physical and psychological abuse by the appellant.[12] This evidence was permitted by the military judge under MIL. R. EVID. 404(b).[13]

---

[6] Even though the military judge analyzed and admitted the uncharged sexual abuse under both MIL. R. EVID. 404(b) and 413, his conclusions were appropriate to a standard MIL. R. EVID. 404(b) prejudice analysis.

[7] AE LIX at 8.

[8] Record at 896-97.

[9] *Id.* at 921, 928.

[10] *Id.* at 965-66.

[11] *Id.* at 967.

[12] Ms. NKB testified to the following 12 uncharged instances of abusive and controlling behavior. (1) In October or November 2010, in their home, the appellant pushed Ms. NKB to the floor while cursing at her. The appellant then pressed his foot on her face, telling her to "smell it" and poured water on her face. Record at 903-05. (2) While living in Japan, the appellant entered the bathroom while she was showering and "peed on her legs and feet." *Id.* at 907-08. (3) While she was attending a women's group at her church, the appellant arrived and began yelling at her because she had not answered her phone. *Id.* at 894-95. (4) While at work in Japan, the appellant continuously called her on the phone to the point that her manager told

The appellant's defense included evidence depicting Ms. NKB as generally unstable, quick to anger, hostile, and suicidal. The defense argued that Ms. NKB's primary motivation in marrying the appellant was to obtain financial support for her and her son, as well as immigration benefits. Thus, the defense theory was that Ms. NKB fabricated the various assault allegations against the appellant in retaliation for his pursuit of a divorce, which would have adversely affected Ms. NKB's financial and immigration status.

At the conclusion of the trial, the military judge instructed the members on how to use the misconduct evidence—both charged and uncharged—admitted under MIL. R. EVID. 413 and 404(b). He gave the standard spillover instruction but told the members that there were exceptions to the general rule that proof of one offense carries with it no inference that the appellant was guilty of any other offense. These particular propensity instructions are the focus of our analysis.

## II. DISCUSSION

### A. MIL. R. EVID. 413 propensity instructions and plain error

The appellant alleges that the military judge committed plain error by instructing the members they could consider evidence of a charged sexual assault for its tendency to show that the appellant had a propensity to commit other charged sexual assaults later in time.

We agree that, in light of the CAAF's decision in *Hills,* this was error. *See also United States v. Hukill*, 76 M.J. 219, 222 (C.A.A.F. 2017) (clarifying that evidence of a charged and contested offense cannot be used as propensity evidence in support of another charged offense regardless of forum, the number of victims, or whether the events are connected.) As in *Hills*, the

---

her to not talk on the phone. *Id.* at 895. (5) The appellant got mad at her for speaking to her brother in Japanese and accused her of cheating on him. *Id.* at 906. (6) The appellant took photos of her without her permission while she showered and told her she was fat. *Id.* at 907. (7) The appellant told her that no one would believe her if she reported his actions because everyone thinks he is a nice guy and he had already told his co-workers that she is "psycho." *Id.* at 908. (8) While living in Virginia, the appellant told her that she could not get a driver's license because she did not have a social security number. *Id.* at 935. (9) The appellant told her that she could not sign their apartment lease in Virginia because she did not have a social security number and could not get one because she was not a U.S. citizen. *Id.* at 934. (10) The appellant threatened to kick her out of the United States and keep her son because her son was a United States citizen. *Id.* at 933. (11) Although she had an international driver's license the appellant only let her use the car when he was in a good mood. *Id.* at 935. (12) She had to rely on the appellant to log her onto the computer and he would only do so when he was in a good mood. *Id.* at 937-38.

[13] AE LIX at 13, 16.

instructions in this case "invited the members to bootstrap their ultimate determination of the accused's guilt with respect to one offense using the preponderance of the evidence burden of proof with respect to another offense." *Hills,* 75 M.J. at 357. Therefore, the military judge's interpretation of MIL. R. EVID. 413 in this case "violated [a]ppellant's presumption of innocence and right to have all findings made clearly beyond a reasonable doubt, resulting in constitutional error." *Id.* at 356.

Where we find instructional error of constitutional dimensions, we may only affirm if the error is harmless beyond a reasonable doubt. *United States v. Wolford*, 62 M.J. 418, 420 (C.A.A.F. 2006). Whether an error is harmless beyond a reasonable doubt "will depend on 'whether there is a reasonable possibility that the evidence [or error] complained of might have contributed to the conviction.'" *United States v. Moran*, 65 M.J. 178, 187 (C.A.A.F. 2007) (quoting *Chapman v. California*, 386 U.S. 18, 24 (1967)) (alteration in original). Since *Hills*, our superior court has held that "[t]here are circumstances where the evidence is overwhelming, so we can rest assured that an erroneous propensity instruction did not contribute to the verdict by 'tipp[ing] the balance in the members' ultimate determination.'" *Guardado*, 77 M.J. at 94 (quoting *Hills*, 75 M.J. at 358) (alteration in original). Although the evidence of charged sexual misconduct that was the subject of the erroneous instructions was but a small part of the overall propensity evidence admitted by the military judge under MIL. R. EVID. 413, "we are not convinced that the erroneous propensity instruction played no role in [a]ppellant's conviction." *Id.*at 94-95. Moreover, we find the appellant suffered prejudice from the erroneous instruction.

## B. The military judge's instructions

Altogether, the military judge gave three sets of instructions informing the members how they could use other acts—both charged and uncharged— as they considered their findings. These three instructions applied to four categories of evidence admitted under either MIL. R. EVID. 413 or 404(b) :

(1) uncharged sexual, psychological, and physical abuse;
(2) uncharged propensity evidence;
(3) charged non-sexual abuse; and
(4) charged propensity evidence.

The military judge instructed the members that they could consider evidence that the accused may have committed *uncharged acts of sexual, psychological, and physical abuse* for the limited purpose of its tendency to:

> prove a motive of the accused to commit the charged sexual offenses and the charged offense of assault consummated by a battery, which is hostility towards Ms. [NKB]; prove that the

accused intended to dominate and control his spouse; and prove a plan or design to dominate and control his spouse.[14]

With respect to the *uncharged propensity evidence*, the military judge instructed the members that if they found by a preponderance of the evidence that the appellant committed the uncharged acts of sexual assault, they could consider evidence of those offenses for their bearing on any matter to which they were relevant to the charged sexual offenses, including their tendency to show the appellant's propensity or predisposition to engage in sexual assault.

Regarding evidence of *charged non-sexual abuse*, the military judge instructed the members that they could consider evidence the appellant committed the charged offense of assault consummated by a battery for the limited purpose of its tendency to prove the appellant's motive to commit the charged sexual offenses that occurred later in time. Here again, the military judge described the potential motive as:

> hostility towards Ms. [NKB]; [proof] that the accused intended to dominate and control his spouse with respect to offenses of sexual assault which allegedly occurred later in time; and [proof of] a plan or design to dominate and control his spouse with respect to offenses of sexual assault which allegedly occurred later in time.[15]

With respect to the *charged propensity evidence*, nine sexual assaults, the military judge instructed the members that if they found by a preponderance of the evidence that the appellant committed these offenses, then they could consider that evidence for its bearing on any matter to which it might be relevant to the other charged sexual offenses that occurred later in time. The military judge stated that this included the evidence's tendency to prove that the appellant was motivated to commit other charged sexual offenses out of hostility to Ms. NKB, that the appellant intended to dominate and control Ms. NKB, and that the appellant had a plan or design to dominate and control Ms. NKB. Consistent with the state of the law at the time, the military judge further instructed the members they could consider evidence of one charged sexual assault for its tendency to show the appellant's propensity or predisposition to engage in sexual assault.[16]

---

[14] Record at 1696.

[15] *Id.* at 1702

[16] *Id.* at 1699-1701.

## C. Analysis of instructions for material prejudice

The government argues that the evidence admitted under MIL. R. EVID. 404(b)—which included all of the MIL. R. EVID. 413 propensity evidence both charged and uncharged—was so overwhelming that the erroneous propensity instruction did not contribute to the members' ultimate findings.

We have previously found erroneous propensity instructions regarding charged offenses harmless beyond a reasonable doubt where they did not contribute to the verdict. In *United States v. Luna*, we found no prejudice despite a similar *Hills* instruction where the overwhelming evidence included a corroborating witness, incriminating text messages from the accused, and no reference by the government to propensity or the propensity instruction during closing argument or rebuttal. *United States v. Luna*, No. 201500423, 2017 CCA LEXIS 314, unpublished op. (N-M Ct. Crim. App. 9 May 2017), *aff'd*, __ M.J. __, 2018 CAAF LEXIS 65 (C.A.A.F. Jan. 10, 2018) (summary disposition). Similarly, in *United States v. Upshaw*, we found an erroneous *Hills* instruction did not contribute to the members' findings of guilty where the evidence of guilt was "overwhelming" and included "substantial" evidence corroborating the victim's testimony. *United States v. Upshaw*, No. 201600053, 2017 CCA LEXIS 363 at *15, unpublished op., (N-M Ct. Crim. App. 31 May 2017), *rev. denied*, 77 M.J. 35 (C.A.A.F. 2017).

However, unlike in *Luna* and *Upshaw,* the government's case here was based almost exclusively on the uncorroborated testimony of Ms. NKB. The evidence against the appellant did not include any significant corroborating witnesses, physical evidence, or self-incrimination by the appellant. Although Ms. NKB's testimony was compelling, it was not overwhelming. Therefore, we are unable to find beyond a reasonable doubt that her testimony rendered the evidence of the earlier charged sexual assaults so unimportant as to not have contributed to the members' findings of guilt. The not guilty findings to all the 2011 sexual assaults suggest the guilty findings for the sexual assaults in 2012 may have resulted from the members following the military judge's instruction that evidence of another charged offense, "may be relevant to another charged offense of sexual assault which allegedly occurred later in time."[17]

We are also not convinced beyond a reasonable doubt that the members understood the conflicting standards of proof and contradicting statements regarding the proper use of evidence of one charged specification to prove another. Therefore, we find this to be a case where the erroneous propensity instruction may have contributed to the members' ultimate determination. Similar to the holdings in *Hills* and *Guardado*:

---

[17] *Id.* at 1699.

These "muddled . . . instructions implicate 'fundamental conceptions of justice' under the Due Process Clause" and raise "the risk that the members would apply an impermissibly low standard of proof." As "[t]he juxtaposition of the preponderance of the evidence standard with the proof beyond a reasonable doubt standard with respect to the elements of the same offenses would tax the brain of even a trained lawyer," we cannot deny that the potential for confusion among members was high. We simply cannot say "that [a]ppellant's right to a presumption of innocence and to be convicted only by proof beyond a reasonable doubt was not seriously muddled and compromised by the instructions as a whole."

*Guardado*, 77 M.J. at 94 (internal citations omitted).[18]

Accordingly, under the particular facts of this case, we are unable to conclude the military judge's erroneous MIL. R. EVID. 413 instructions were harmless with respect to the findings of guilty of violating Article 120, UCM. With regard to the guilty findings to Additional Charge I and Charge II, we conclude the findings are correct in law and fact, and no error materially prejudicial to the substantial rights of the appellant occurred. Arts. 59(a) and 66(c), UCMJ.

### III. CONCLUSION

The findings of guilty to Charge II (2010 Article 128 offense) and Additional Charge I (drug plea) and their sole specifications are affirmed. The remaining findings of guilt and the sentence are set aside. The record of trial is returned to the Judge Advocate General of the Navy for remand to an appropriate convening authority with a rehearing authorized.

Chief Judge GLASER-ALLEN concurs.


FULTON, Judge dissenting:

I would affirm the findings in this case because I am convinced beyond a reasonable doubt that the *Hills* error in this case did not contribute to the verdicts. I come to this conclusion for three reasons:

---

[18] *See also United States v. Robertson*, 77 M.J. 518 (A.F. Ct. Crim. App. 2017), *rev'd in part and remanded*, No. 18-0087/AF, __ M.J. __,(C.A.A.F. Apr. 18, 2018)(reversed in part in light of *Hills* and *Guardado*) (summary disposition); *United States v. Rice*, 2017 CCA LEXIS 745 (A.F. Ct. Crim. App. 21 Nov 2017), *rev'd in part and remanded,* No. 18-0101/AF, __ M.J. __, 2018 CAAF LEXIS 208 (C.A.A.F. Apr. 18, 2018) (reversed in part in light of *Hills* and *Guardado*) (summary disposition).

First, the government's theory of this case was that the appellant engaged in a long-term effort to dominate and control his wife, NKB. This effort took the form of sexual, physical, and psychological abuse. The government's evidence and arguments were consistent with this theory. To the extent members considered evidence of any charged offense relevant to other charged offenses, I am convinced that they properly considered it for its considerable tendency to show how the appellant intentionally engaged in this long-term scheme of abuse and control.

Second, I conclude that the *Hills* error is harmless is because the government presented substantial evidence of *uncharged* acts of sexual abuse. Even if the members did conclude that the appellant had a propensity to commit sexual offenses, the uncharged acts of sexual abuse would have led them to this conclusion anyway had the erroneous instruction never been given.

Third, after considering the instructions in their entirety, I do not believe that they were so confusing as to cause the members to determine the appellant's guilt by an erroneously low standard.

## I. MOTIVE, INTENT, AND PLAN

Before trial, the government moved *in limine* to present evidence of uncharged conduct. In a six-page offer of proof, the government moved to admit 59 acts of uncharged abuse under MIL. R. EVID. 404(b).

Some of this abuse was physical: the government sought to prove that the appellant pushed Ms. NKB down, pressed his foot down against her face, poured water on her, and even urinated on her. Some abuse was emotional: the government sought to prove that the appellant told Ms. NKB she could not get a driver's license because she did not have a social security number, and threatened to kick her out of the United States and take her son, who was a United States citizen. The appellant took a photograph of Ms. NKB while she was showering, mocked her with it, told her she was fat, and refused to delete the picture. The appellant also restricted Ms. NKB from using the car and the computer. And some abuse was sexual: the appellant's sexual abuse of Ms. NKB included nonconsensual sexual intercourse, anal penetration, and other nonconsensual sexual acts. The government moved separately to admit the uncharged acts of physical and emotional abuse under MIL. R. EVID. 404(b), and the uncharged acts of sexual abuse under MIL. R. EVID. 413.

Even though the government moved separately to admit the uncharged sexual abuse under MIL. R. EVID. 413, the relevance of all the uncharged abuse—physical, psychological, and sexual—was exactly the same: the uncharged misconduct demonstrated the appellant's motive, intent, and plan.

In a detailed 23-page ruling, the military judge granted in part, and denied in part, both motions. The military judge evaluated the uncharged physical and psychological abuse under MIL. R. EVID. 404(b), preliminarily admitting three acts of physical abuse and 13 acts of psychological abuse. This uncharged abuse was admissible under MIL. R. EVID. 404(b) because it established the appellant's motive for committing the charged offenses and demonstrated his intent and plan intent to dominate and control his wife.

The military judge evaluated the uncharged acts of sexual abuse under MIL. R. EVID. 413, preliminarily admitting 13 acts. But even though he evaluated these acts under MIL. R. EVID. 413 and could have admitted them for any relevant purpose, the military judge found that these acts were admissible for the same reasons the uncharged physical and psychological abuse were admissible: they tended to show the appellant's hostility toward his wife, and his motive, intent, and plan to dominate and control her. The military judge's ruling does not make any reference to the unique use the government could have made of this evidence under MIL. R. EVID. 413-- namely to establish that the appellant had a general propensity to commit sexual assaults. In other words, the evidence of these uncharged sexual offenses would have been admissible under MIL. R. EVID. 404(b), even if there were no MIL. R. EVID. 413.

Of course, the motions *in limine* pertained to uncharged misconduct, not the charged conduct that was the subject of the erroneous instruction in this case. But the military judge's findings as to the *uncharged* sexual conduct illuminates how evidence of *charged* sexual conduct was relevant to the rest of the offenses on the charge sheet. Evidence that is relevant to more than one offense should be considered as to every offense to which it is relevant. This is an especially important concept in this case. Evidence that the appellant committed the charged sexual assaults was relevant in at least two ways: Of course this evidence tended to prove the offense that was the direct subject of the testimony. But it was also relevant for the same reason evidence of the *uncharged* abuse—both sexual and nonsexual—was relevant; to demonstrate the appellant's motive, intent, and to prove the existence of the appellant's overarching plan to dominate and control NKB. In short, I am convinced that had the members never received the erroneous instruction, they would still have properly considered evidence of charged sexual offenses to be relevant to the other charged offenses.

## II. PROPENSITY EVIDENCE

The government did not argue that the appellant had a general propensity to commit sexual assault. This reflects the fact that the evidence for propensity in this case—with or without the erroneous *Hills* instruction— was not especially strong. All of the alleged sexual offenses occurred in the

context of one relationship. More particularly, they all occurred in the context of the appellant's ongoing effort to dominate and control NKB. The government presented no evidence that the appellant engaged in sexual offenses outside the context of this plan.

But even if the members found that evidence that charged sexual offenses tended to show the appellant had a propensity to commit sexual assault, the error would still be harmless. The government introduced evidence of four uncharged sexual assaults under Mil. R. Evid. 413. The members need not have relied on evidence of charged assaults to make any determinations about the appellant's propensity to commit sexual assaults against NKB. The erroneous instruction in this case harmlessly permitted the members to consider evidence in a manner cumulative to properly admitted propensity evidence. I detect no real risk of prejudice in the error.

### III. INSTRUCTIONS

In *Hills*, the Court of Appeals for the Armed Forces did not simply find that the use of charged acts to prove that an accused has a propensity to commit sexual offenses was unconstitutional. It also found that the "muddled" instructions, which asked the members to consider the same evidence first using one burden of proof and then another, "creat[ed] the risk that the members would apply an impermissibly low standard of proof, undermining both 'the presumption of innocence and the requirement that the prosecution prove guilt beyond a reasonable doubt[.]"[1]

This is the only potential source of prejudice to give me pause. The instructions, while consistent with the state of the law at the time, are complicated. If the instructions might have left the members confused about how to use the evidence in this case, we should set aside the affected findings. I do not think they did.

Again, testimony that the appellant committed the charged conduct was relevant for two purposes: It tended to prove that the conduct being described happened as alleged on the charge sheet. It also tended to prove that the appellant had a motive, an intent, and a plan to dominate and control NKB, all of which were relevant to the other charged instances of abuse.

The military judge instructed the members that if they found by a preponderance of the evidence that a charged sexual assault occurred, they could consider that evidence

---

[1] *United States v. Hills*, 75 M.J. 350, 357 (C.A.A.F. 2016) (quoting *United States v. Wright*, 53 M.J. 476, 481 (C.A.A.F. 2000) (internal quotation marks and citation omitted)).

. . . for its bearing on any matter to which it is relevant in relation to the offense being deliberated upon. This includes the evidence's tendency, if any, to prove a motive of the accused . . . prove that the accused intended to dominate and control his spouse . . . and prove a plan or design of the accused to dominate and control his spouse . . . [.][2]

That the military judge took the unusual step of explaining MIL. R. EVID. 413 evidence as if it had been presented under MIL. R. EVID. 404(b) is telling. Just as the military judge's analysis of the uncharged sexual assaults demonstrated that that evidence was primarily relevant to show motive, intent, and plan, so too this instruction shows that evidence of charged conduct primarily tended to prove motive, intent, and plan—not predisposition. And while the military judge did go on to tell the members that they could consider evidence of charged sexual offenses to find a propensity to commit them, uncharged sexual assaults already supported such a finding.

Admittedly, some of the factors that made this error prejudicial in *Hills* are present here. The case rests largely on the testimony of one person. The members accepted some of the complaining witness's allegations and rejected others. But my confidence that the error is harmless is not based on the overwhelming strength of the government's evidence. Rather, it is based on the insignificance of the error under the facts of this case. The matter of the appellant's propensity to commit sexual assault was simply not a factor in this case. Even if it had been, properly admitted evidence that could have supported a finding of the appellant's propensity ensured that any *Hills* error was harmless.

I respectfully dissent.

For the Court



R.H. TROIDL
Clerk of Court

---

[2] Record at 1700.